THE UNITED STATES, PLAINTIFFS IN ERROR, *v.* THOMAS GIBBES MORGAN, THOMAS W. CHINN, MICAJAH COURTNEY, JOSIAH BARKER, AND THE HEIRS AND LEGAL REPRESENTATIVES OF JOHN DAVENPORT, DECEASED.

Although a bill of exceptions is imperfectly drawn, yet if this court can ascertain the substance of the facts, and the questions on which the judge instructed the jury are apparent, it will proceed to decide the case.

Where a collector received treasury-notes in payment for duties, which were cancelled by him, but afterwards stolen or lost, altered, and then received by him again in payment for other duties, he is responsible to the government for the amount thereof.

So also he is responsible, to a certain extent, where treasury-notes were received by him in payment for duties, cancelled, but lost or purloined (without his knowledge or consent) before being placed in the post-office to be returned to the Department.

And this is so whether the notes be considered as money or only evidences of debt by the Treasury Department.

But the extent, above mentioned, to which his responsibility goes is to be measured by a jury, who are to form their judgment from the danger of the notes getting into circulation again, the delay and inconvenience in obtaining the proper vouchers to settle accounts, the want of evidence at the Department that the notes had been redeemed, or from any other direct consequence of the breach of the collector's bond.

THIS case was brought up, by writ of error, from the Circuit Court of the United States for the District of Louisiana.

It was a suit brought upon a collector's bond against Thomas Gibbes Morgan, the principal, and Thomas W. Chinn, Micajah Courtney, Josiah Barker, and John Davenport, sureties. The bond was executed on the 14th of December, 1841, and recited that Morgan had been appointed collector of the customs for the district of Mississippi, in the State of Louisiana, on the 25th of June, 1841. It was in the usual form, with a condition that Morgan "has truly and faithfully executed and discharged, and shall continue truly and faithfully to execute and discharge, all the duties of the said office." The penalty was $120,000.

The suit was brought on the 15th of December, 1843, and the breach is thus set out in the petition:—

"Now these petitioners, by their attorney aforesaid, aver and expressly charge that the condition of said bond or writing obligatory has been broken in this, to wit, that the said Thomas Gibbes Morgan had not truly and faithfully executed and discharged, nor did said Thomas Gibbes Morgan continue truly and faithfully to execute and discharge, all the duties of the said office according to law. That the said Thomas Gibbes Morgan did, both before and after the time of the signing of said bond, and while he was collector as aforesaid, receive as said collector large sums of money belonging to petitioners, which he has in part only paid to petitioners, leaving the

balance of $274,775.17, which was received by said Morgan as said collector, and while he was said collector, and which said balance said Morgan has refused to pay to petitioners, and yet retains the same in his possession, though often directed and requested by petitioners to pay the same to them. That said Morgan has not, since the first quarter of the year 1843, transmitted the returns of his accounts as said collector for settlement to the proper officer, as he is required by law to do, and for that reason petitioners are unable to specify the items of said balance, but they reserve the right, by amended petition or otherwise, of furnishing a detailed statement of said Morgan's account as said collector so soon as he shall transmit his quarterly returns as aforesaid; by means whereof a right of action has accrued to these petitioners to have and recover the penalty of said bond or writing obligatory, which, though amicably requested, said obligors refuse to pay.

" That said petitioners also reserve the right of proceeding, by amended petition or otherwise, against the said Thomas Gibbes Morgan for any other or greater sum than the penalty of said bond herein sued for, even should the same exceed the said balance of $274,775.17, inasmuch as, from the omission and neglect of said Morgan to furnish said quarterly returns, petitioners are unable to finally adjust the accounts of said Morgan as said collector."

The defendants answered with a general denial, as in a plea of *nil debet.*

On the 27th of January, 1848, the cause came on for trial in the Circuit Court, and continued during that day, the 28th, and the 29th. The record stated the impanelling of the jury, the opening of the case by the district attorney, the fact that evidence was given on the part of the plaintiffs and on the part of the defendants. and the following verdict of the jury : —

" Verdict in favor of the United States, viz. :

| | |
|---|---|
| For the balance acknowledged, . . . . | $32,400.13 |
| And commissions, . . . . . . . | 28,169.44 |
| | |
| Amounting to . . . . . . | $60,569.57 |

" JOHN CASTELLANO, *Foreman.*
"*New Orleans; January 29th, 1848.*"

The verdict was recorded and judgment entered up on the 9th of February, 1848. But the record did not show, in any part of it, what the evidence was which was given either on the part of the plaintiffs or defendants. The following bills of exception refer to, but do not state it.

" And afterwards, to wit, on the 4th day of February, 1848, the following bill of exceptions was filed by the United States district attorney : —

" THE UNITED STATES *v.* THOMAS GIBBES MORGAN and others.

In the United States Circuit Court in and for the Fifth Circuit and District of Louisiana.

" Be it remembered, that, at the December term of said court, on the trial of the above-named case, on this Saturday, the 29th day of January, in the year 1848, after the argument on both sides had been closed, and before the jury had retired, the attorney of the United States for the district aforesaid prayed the court to charge the jury as follows, to wit : —

" First. That T. G. Morgan, and the sureties on his official bond, were liable in law for the sum of $ 99,915.27, an amount of treasury-notes received by T. G. Morgan, collector, in payment of public dues, and lost by him, or stolen from him while in his possession, after they had been marked ' cancelled,' and before they were deposited in the post-office ; for which purpose they had been put up in a bundle.

" And, on the day and date aforesaid, the attorney of the United States aforesaid further prayed the court to charge the jury, —

" Second. That the defendant, T. G. Morgan, and the sureties on his official bond, were liable in law for the sum of $ 1,074.89, being the amount of two treasury-notes of five hundred dollars each, and the interest thereon ; which notes were received in payment of public dues by T. G. Morgan, collector, stolen from his office, altered, and afterwards again received by him.

" The court refused to give the above charges as required, but charged the jury that, if they believed, from the evidence before them, that the treasury-notes in controversy were received by the defendant in payment of revenue, and that he took receipt upon the back of them when received from the persons paying them in, and cancelled them on the face of each according to law, and had them put into a bundle in the usual manner for transmitting them to the Treasury Department, and gave orders to the person who had been in the habit of delivering them at the post-office to deposit them there for transmission; and they were lost or purloined without the knowledge or consent of defendant, he is not answerable to the plaintiff for them. And the court further charged the jury, that if they believed from the evidence that the two treasury-notes, amounting to $ 1,074.89, were part of the treasury-notes so cancelled, and intended to have been forwarded to the Treasury Department, but had been subsequently so altered

without the knowledge or consent of the defendant, so as to make them appear to be genuine, and he afterwards received them in payment of duties believing them to be genuine, he is not responsible to the plaintiff for them, but is entitled to a credit on the account of the plaintiff for that amount.

" Wherefore, the attorney of the United States aforesaid tenders this his bill of exceptions to the said refusal, and prays the same may be made a part of the record.

. " Theo. H. McCaleb, [L. S.]
*U. S. Judge.*

" And afterwards, to wit, on the 5th day of February, 1848 the following bill of exceptions, taken by the counsel of the defendants, was filed : —

" The United States *v.* Thomas Gibbes Morgan and others.

In the United States Circuit Court, in and for the Fifth Circuit and District of Louisiana.

" Be it remembered, that, at the December term of said court, on the trial of the above-named case, on this Saturday, the 29th day of January, in the year 1848, after the defendants had introduced evidence to show that the item charged by the said T. G. Morgan in his account for the second quarter of the year 1842, for safe-keeping and disbursement of public moneys from 12th July, 1842, to 26th July, 1843, being commission thereon, amounting to the sum of $28,169.44, was reasonable and just under the circumstances, and which said item had been disallowed by the accounting officer of the Treasury Department; and after the argument on both sides had been closed, and before the jury had retired, the counsel for the defendants aforesaid requested and prayed the court to charge the jury as follows : —

" That the defendant, T. G. Morgan, when acting as collector of the customs, not being under the law a disbursing officer, and the payment of the drafts drawn on him by the Treasurer of the United States not being in the course of his duties as collector, he is entitled to a reasonable compensation for his risk and trouble in keeping and disbursing the money.

" The court refused to give the above charge as required, but charged the jury that, under the law, the defendants were not entitled to the credit and compensation by them claimed as aforesaid.

" Wherefore the defendants, by their counsel, tender this their bill of exceptions to the said refusal, and pray that the same may be made a part of the record.

" Theo. H. McCaleb, [L. S.]
*U. S. Judge.*"

The attorney for the United States sued out a writ of error, and brought the case up to this court.

It was argued by *Mr. Crittenden* (Attorney-General), for the plaintiffs in error, no counsel appearing for the defendants.

*Mr. Crittenden* contended that the court erred, to the prejudice of the United States in the instructions given, and also in refusing to give .hose requested on their part, and that the defence allowed by the court below did not discharge, and ought not to discharge, the collector and his sureties in this action on his official bond, and referred to United States v. Prescott, 3 Howard, 578.

Mr. Justice WOODBURY delivered the opinion of the court.

This was an action on an official bond, given to secure the faithful performance of duty by one of the defendants, as collector of the port of New Orleans.

His appointment took place in June, 1841, and the bond was dated in December of the same year, and the condition was averred to have been broken in 1843 by not paying over large sums of money collected for the United States, and by not making seasonable returns of his accounts.

The breaches were denied, and at the trial it would seem that evidence was given in relation to them, and the jury returned a verdict for the plaintiffs for $ 60,569.57.

But something like $ 100,000 more appear to have been claimed, which the jury, under the instructions given by the court, disallowed, and exceptions were thereupon filed to these instructions.

The object and character of the exceptions are intelligible by means of what is stated by the judge in connection with them, though no preliminary evidence is set out, on which the points of law arose.

This mode of drawing up a bill of exceptions is defective, as the material facts or proofs on which the instructions rest should be inserted before the instructions, in order that we may see if the points arise on which they are given, and to which exception is taken. Zeller's Lessee v. Eckert et al., 4 Howard, 297, 298; Vasse v. Smith, 6 Cranch, 233, 234; 3 Howard, 555, 556.

The treasury transcript in support of the suit, and the precise breach, and the instructions or circulars from the Department as to the mode of cancelling and transmitting the notes in the present case, should appear, so far as material, as well as the evidence how they were in fact cancelled, and what has probably become of them since.

But considering that we can, by way of inference from the instructions in the form in which they were given, ascertain the substance of the facts, and save delay in sending the case back for a fuller and more technical bill before deciding the points of law presented, we have concluded to state our opinion now on those points.

And neither party can complain of this, when, as here, neither has objected to the imperfect form of this bill, and when the questions on which the judge instructed the jury are apparent, and are not pretended to have been abstruse or irrelevant, but related to the gist of the matter in controversy. Etting *v.* Bank of the United States, 11 Wheaton, 59.

The material facts, from what is developed in the charge, seem to have been, that the collector received near $100,000 for duties in treasury-notes, and cancelled them; but after being put up in a bundle to be sent to the Treasury Department, through the post-office, and orders given to the servant accustomed to deliver packages there to deliver these, the bundle was stolen or lost.

It appeared further, that two of these notes for $500 each were soon after altered and presented to the collector in payment of other duties, and received by him as genuine.

One of the instructions excepted to was, that if these last two notes were taken by the collector without his knowledge or consent to their alteration, and if they appeared to be genuine, and he believed them to be so, he was not liable for their amount and interest.

But we all agree in opinion that this instruction was erroneous. A collector is bound to take genuine money or notes rather than counterfeit ones, or the government would be exposed to infinite frauds and losses. The collector, too, need not thus suffer in a case like this, as he is required to keep a register of all treasury-notes received, and from whom taken; and if any prove to be counterfeit, or altered, he has a remedy in his own name, or that of the government, for the amount on the person who paid them in.

It is well settled, likewise, that an attempted payment in counterfeit money, as cash, is in law no payment. Ellis *v.* Wild, 6 Mass. 321; Young *v.* Adams, Ibid. 182, 186; Jones et al. *v.* Ryder et al., 5 Taunton, 488; Salem Bank *v.* Gloucester Bank, 17 Mass. 1, 27, 28; 2 Johns. 455; 6 D. & E. 52. And as the collector here has given a discharge for the duties to the amount of these notes, and has acknowledged the receipt of payment for the duties to the government, as well as the importer, and received or paid over nothing for them which he was authorized to receive, he must stand chargeable for that amount.

He was no more justified in taking cancelled treasury-notes for duties than in taking waste-paper, and it was his particular duty to see that they had not been cancelled or counterfeited; and in the schedule of the treasury-notes, which he was obliged to keep, he had ample means of detection. Though the government might still possess a remedy against the importer for the duties, there having yet been no valid payment by him, yet this is no bar, if they choose to resort to their remedy on the bond of the collector, for his official negligence and wrong in taking for their revenue counterfeit or cancelled notes.

The other instruction presents a question of more difficulty. It was, that the collector was not liable for the treasury-notes which he had received for duties, if they had been duly cancelled, after received, and were put up and ordered to be delivered at the post-office for transmission to the Treasury Department, though they were lost or purloined (without his knowledge or consent) before placed in the charge of the post-office.

A majority of us think that this instruction also was erroneous. It is manifest that, if the notes, though cancelled for security in keeping them till transmitted, were still to be regarded for any purpose as money, the collector must be considered as liable for their amount till paid to the Department, or actually delivered at the post-office, in conformity with the orders of the Department. It would then be a liability on his bond to pay over what money he had received, as that manifestly had not here been done; or it would be a liability to perform his duty as promised in his oath and bond, and as required by law and treasury instructions, — to transmit or pay over the notes, and which, considering them as money, it cannot be pretended he has done. On this it is enough, in support of his continued responsibility, to refer to the United States v. Prescott, 3 Howard, 578.

But were these notes, when lost, still money?

It is true that originally they were by law to be received as money. (Act of 12th October, 1837, 5 Stat. at Large, 202, § 6.) The fact that he is liable for the interest on these notes after received and cancelled, and until they reach the Department, appears to favor the idea that the notes were still, for some purposes at least, to be treated as continuing money between the collector and the Department. (5 Stat. at Large, 203, § 7.)

But if this view be not clearly sustainable, and we doubt whether, under all the circumstances, after cancelled, they can be regarded as money, or money's worth, for the purpose of sustaining this action, yet it is clear that they still possess some

value as vouchers, and as evidence for the Treasury Department that they have been redeemed.

It is still clear, also, that, though cancelled, the Treasury Department, unless having possession of them, is exposed to expense and loss by their being altered, and the cancellation removed or extracted, and their getting again into circulation, as two did here, and being twice paid by the government.

For that reason, these notes, though cancelled, are, by law and treasury orders, to be transmitted to the Department, and when received there are to be credited to the collector; but not till then, as a general rule. If the collector, therefore, fails to send them there or to do all which is proper to get them there, by having them put into the actual possession of some public transmitting agent like the post-office, he fails in his duty; and it is not enough for him to say, in justification, as in this case, and as the court below upheld, that he gave orders to the accustomed servant to put them in the post-office.

That servant was his own agent, and not the agent of the Treasury Department. He allowed the notes to be lost or stolen before reaching the post-office. His employer must suffer by his neglect or unfaithfulness rather than third persons. The condition of the bond of the collector has, therefore, in this view, never been fulfilled, and *primâ facie* he is technically liable for its penalty, and is in justice, as well as law, responsible for the amount of the injury thus caused by himself or his own agent.

The rule of damage would be the amount of the notes, — unless it appeared, as here, that they had been cancelled, and unless it was shown that the government had suffered, or was likely to suffer, damage less than their amount. How much is the real damage, under all the circumstances, is a question of fact for the jury, and should be passed on by them at another trial.

Only that amount rather than the whole bond need, in a liberal view of the law, and of his bond, be exacted; and that amount neither he nor his sureties can reasonably object to paying, when he, by the neglect of himself or his agent, has caused all the injury which he is in the end required to reimburse. And if any equities exist to relieve him from that, none of which are seen by us, it must be done by Congress and not the courts of law.

Any thing less than this, — any less strict rule, in the public administration of the finances, would leave every thing loose or unsettled, and cause infinite embarrassments in the accounting offices, and numerous losses to the government.

The argument which has been pressed to exonerate him

even from this extent of liability rests on an erroneous impression that he was acting as a bailee, and under the responsibilities of only the ordinary diligence of a depositary as to the cancelled notes, when in truth he was acting under his commission and duties by law, as collector, and under the conditions of his bond. The collector is no more to be treated as a bailee in this case than he would be if the notes were still considered for all purposes as money.

He did not receive them as a bailee, but as a collecting officer. He is liable for them on his bond, and not on any original bailment or lending.

And if the case can be likened to any species of bailment in forwarding them, by which they were lost, it is that of a common carrier to transmit them to the treasury, and in doing which he is not exonerated by ordinary diligence, but must answer for losses by larceny and even robbery. 2 Salk. 919; 8 Johns. 213; Angel on Carriers, §§ 1, 9.

Finally, we decide on this last question as a matter of law this, and this only, namely, that the collector is liable for all the actual damages sustained by his not returning the notes as required by law and official circulars; or for not putting them in the post-office so as to be returned. (5 Stat. at Large, 203.) But how much this damage was is a matter of proof before the jury, fixing the real amount likely to happen from their getting into circulation again, as two of them did here, from delay and inconvenience in obtaining the proper vouchers to settle accounts, from the want of evidence at the Department that the notes had been redeemed, or from any other direct consequence of the breach of the condition of his bond, and of his instructions under it.

Their return in the mode prescribed was by the original treasury-note law deemed important " to promote the public interests and convenience, and secure the United States and the holders of said notes against fraud and losses." (Sec. 12th of the act of 1837, before cited.) The neglect to do this is a manifest and injurious breach of his bond.

The judgment below, then, must, for both of these instructions excepted to, be reversed, and the case sent back for another trial, in conformity with the principles we have laid down.

### *Order.*

This cause came on to be heard on the transcript of the record from the Circuit Court of the United States for the District of Louisiana, and was argued by counsel. On consideration whereof, it is now here ordered and adjudged by this court, that the judgment of the said Circuit Court in this cause be,

and the same is hereby, reversed, and that this cause be, and the same is hereby, remanded to the said Circuit Court, with directions to award a *venire facias de novo.*