## NORFOLK SAND & GRAVEL CORPORATION v. OHIO LOCOMOTIVE CRANE CO.

(Circuit Court of Appeals, Fourth Circuit. September 8, 1914.)

No. 1248.

1. EVIDENCE (§ 441*)—EXTRINSIC EVIDENCE OF CONTRACTS—OFFER AND ACCEPTANCE.

Where a proposal to purchase an electric crane provided that the terms were 50 per cent. cash 30 days, balance in four notes of equal amount, payable 3, 6, 9, and 12 months, at 6 per cent., and that all communications between the parties, whether verbal or written, with reference to

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the subject of the contract, were superseded by the proposal and its acceptance by the purchaser, followed by its approval by an officer of the seller, should constitute a binding contract, and no modification should be binding on either party, unless it should be in writing, signed and accepted in the same manner as the original contract, a letter written by the seller's Southern representative, confirming an agreement as a part of the proposal that the seller should take an electric machine of the buyer and allow $2,300 on the price of the new one, not accepted or signed by any of the seller's officers, and not shown to have been submitted to the seller for acceptance, was ineffective to supersede the terms specified in the accepted proposal.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1719, 1723–1763, 1765–1845, 2030–2047; Dec. Dig. § 441.*]

2. PRINCIPAL AND AGENT (§ 173*)—ACTS OF AGENT—RATIFICATION—EVIDENCE.

In an action for the balance of the price of a crane, evidence *held* insufficient to show a ratification by the seller of an agreement of its agent to accept an old crane owned by the buyer as part payment.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 659–661; Dec. Dig. § 173.*]

3. SALES (§ 418*)—BREACH OF CONTRACT—DAMAGES.

For the breach of a seller's contract the buyer may recover such damages as are the natural, proximate, and certain consequences thereof, but cannot recover those which are remote, speculative, and contingent.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1174–1201; Dec. Dig. § 418.*]

4. SALES (§ 420*)—BREACH OF CONTRACT—ELEMENTS OF DAMAGES.

Where it is doubtful whether items of damage claimed by a buyer from the seller's breach of contract are the natural, proximate, and certain consequences of the breach, or are remote, speculative, and contingent, the question must be determined as one of fact.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 1202; Dec. Dig. § 420.*]

5. SALES (§ 418*)—BREACH OF CONTRACT—DAMAGES—LOSS OF PROFITS.

In an action for the price of a locomotive crane, the buyer was not entitled to recover on a counterclaim the estimated extra cost of unloading gravel by reason of the failure of the crane to work properly, or the expense of demurrage due to the same cause.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1174–1201; Dec. Dig. § 418.*]

In Error to the District Court of the United States for the Eastern District of Virginia, at Norfolk; Edmund Waddill, Jr., Judge.

Action by the Ohio Locomotive Crane Company against the Norfolk Sand & Gravel Corporation. Judgment for plaintiff for less than the relief demanded. Defendant brings error, and plaintiff assigns cross-error. Affirmed.

Albert L. Roper and Ralph H. Riddleberger, both of Norfolk, Va. (Riddleberger & Roper, of Norfolk, Va., on the brief), for plaintiff in error.

William H. White, Jr., and W. H. T. Loyall, both of Norfolk, Va. (Loyall, Taylor & White, of Norfolk, Va., on the brief), for defendant in error.

Before PRITCHARD and WOODS, Circuit Judges.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

WOODS, Circuit Judge.  This action for $4,800, the alleged contract price of a hoisting crane and a cab, was tried under consent by the court without a jury, and resulted in a judgment in favor of the plaintiff for the amount claimed, less $709.48 allowed to the defendant on its claim of damages for breach of. the contract as to the motive power.   The assignments of error bring up the defenses which were rejected by the District Court.   In passing on these the principle must be applied that all findings of fact by the District Judge having reasonable support in the evidence must be accepted as true.

The defendant's first claim is a credit of $2,300, which it is alleged the plaintiff contracted to allow for an old crane which the new one was to displace.  G. W. Butt was the agent at Norfolk of the Ohio Locomotive Crane Company, through whom the negotiations for the sale of the crane began.  On April 11, 1912, the Ohio Company signed a paper partly printed and partly written called "Proposal No. 2328," signed in its name, "per Chas. F. Michael, Sec'y," indorsed or "accepted" by the Norfolk Company April 15, 1912, "per Geo. W. Roper, V. P.," and "approved" by the Ohio Company, "per Chas. F. Michael, Sec'y," April 17, 1912.   The contract thus made contained these stipulations :

"The terms of payment are 50 per cent. cash 30 days from date of invoice, balance in 4 notes of equal amount, payable 3, 6, 9, and 12 months from date of invoice, said notes to bear 6 per cent. interest."

"All previous communications between the parties hereto, whether verbal or written, with reference to the subject-matter herein dealt with, shall be superseded by this proposal, and its acceptance by the purchaser (or by a duly authorized agent of the purchaser), followed by its approval by an officer of the company, whose signature it must bear shall make it a binding contract: however the proposal, unless accepted by the purchaser within thirty days from its date, may, at the option of the company and without notice, be declared void and withdrawn."

"No modification of the contract shall be binding upon either party, unless such modification shall be in writing, signed and accepted in the same manner as the original contract."

In a letter dated April 13, 1912, addressed to the Norfolk Company and signed in the name of the Ohio Company, "by G. W. Butt, So. Representative," is found this stipulation :

"Confirming agreement and making part of proposal No. 2328, we will take the electric machine completed that you are now using as part payment on the locomotive crane we are to furnish; the allowance price being $2,300 as it now stands."

[1] The finding of the District Judge that this paper was not sent to the Ohio Company with the proposal and was not approved by an officer of the company is well supported by the evidence.   The defendant was under the duty to ascertain the extent of Butt's authority.   So far from the conduct of the plaintiff leading the defendant to suppose that Butt had authority to make the terms of sale, it very explicitly negatived such authority.   The requirement that the contract be in writing and be sent to the Ohio Company for the approval of an officer plainly notified defendant that Butt's representation extended no further than taking and submitting to his principal a written offer.   The letter relied on by defendant as part of the offer was not only a separate document,

but it purported to supersede the provision of the formal instrument that 50 per cent. cash should be paid in 30 days by the totally different provision that the plaintiff should take the old machine at a valuation of $2,300. The defendant, having been thus put on notice not to rely on Butt's promise, must take the consequences of his failure to send the letter to the plaintiff along with the formal contract for approval of its terms. The plaintiff having submitted to the defendant a written offer of sale clear in all its terms, and the defendant having accepted it in writing, no unauthorized promise of Butt can affect the right of the plaintiff to enforce the contract. If there be loss, the defendant must bear it, since it was its own fault that it was deceived by Butt's letter. National Safe Deposit Co. v. Hibbs, 229 U. S. 391, 33 Sup. Ct. 818, 57 L. Ed. 1241.

[2] 2. The defendant next contends that the evidence admits of no other reasonable inference than that the plaintiff by its conduct ratified Butt's agreement to accept the old machine as part payment of the purchase money. On July 10, 1912, after the crane had been set up, the plaintiff wrote, calling attention to the payments provided for in the contract. In reply Mr. Roper, vice president of the defendant company, wrote a letter mentioning the failure of the machine to come up to specifications, and saying:

"I do not quite understand the meaning of the third paragraph of your letter, on second page. In accordance with our contract, you were to allow us $2,300, which practically represented the cash payment for our old crane. This matter was taken up by us with your representative and made a portion of an agreement or proposal numbered 2328."

To this the plaintiff answered as follows:

"We are in receipt of your letter of the 15th inst., contents of which have been very carefully noted, and, as we thought these matters could be best explained to you verbally, we have arranged to have our Mr. Rogers call upon you, having left here last evening, feeling that he will be able to satisfy you on the several points you have raised. Therefore we will await Mr. Rogers' report."

Rogers, being delayed by other work, did not get to Norfolk until September. It appears from the correspondence that all matters of difference were discussed by him with defendants and Butt, but it does not appear that he made any concession as to the terms of payment.

The following extract from a letter of the vice president of the Norfolk Company, dated November 18th, shows clearly that he regarded the difference as to the terms and manner of payment in abeyance pending the efforts of the Ohio Company to make the machine work satisfactorily:

"Mr. Herndon spoke to me with respect to settlement for the machine, and I told him that, as soon as this motor could be changed and the machine put in shape as contemplated, we would be more than glad to take up with you question of settlement. I told him that the delay was caused by your failure to send machine properly equipped, and that this delay on your part caused us to be involved in a lawsuit, which will result in a great deal of expense. I suggested to Mr. Herndon that as soon as the machine was altered in accordance with his views, with the motor in the new position, it would be better for some member of your firm to take the matter of settlement up with

us in person. I believe you will find this the best way, especially in view of the seeming misunderstanding on your part with respect to the old machine."

It is true that ratification may be implied from silence or failure to repudiate after knowledge of the unauthorized act of an agent. Feild v. Farrington, 77 U. S. (10 Wall.) 141, 19 L. Ed. 923; Insurance Co. v. McCain, 96 U. S. 84, 24 L. Ed. 653. But whether silence or failure to repudiate amounts to ratification is a question of fact depending on circumstances. Supervisors v. Schenck, 72 U. S. (5 Wall.) 772, 18 L. Ed. 556; Hansen v. Boyd, 161 U. S. 397, 16 Sup. Ct. 571, 40 L. Ed. 746. The entire correspondence, and especially the defendant's letter, tends strongly to support the conclusion of the District Judge that the difference as to the manner and terms of payment was understood by both parties as remaining open until the machine was made to work satisfactorily.

3. The question of damages is not free from difficulty. The District Judge filed two separate papers as his findings of fact, but as both were filed before the judgment was entered, and are referred to as the basis of the judgment, they must be read together as one paper. In the first of these papers items to the amount of $709.48 are allowed to the defendant as follows:

Material, and other items necessary to alteration of machine (not disputed) .......................................................... $394 48
Loss while machine could not be used at all during period in which alterations were being made, 21 days at $15 a day.............. 315 00

The following items were disallowed:

Higher cost of operation of machine that was inadequate and not in accordance with contract:
Extra cost of unloading 15,971 cu. yds. of gravel @ .0389¢.........., $621 27
Extra cost of unloading 32,907 cu. yds. of sand @ .02¢............. 658 14
Amount paid Southern Transportation Co. demurrage for overtime on gravel barges which could not be discharged in time allowed on account of slowness and inadequacy of hoist (vouchers 1083, 1326 and 1495)....................................................... 202 50

In the second paper filed, referring to these disallowed items, among other things, the court found "that the defendant proved certain damages in offset as set forth in statements Nos. 1, 2, 3, and 4, to be read as part of this finding," etc., and then repeats his disallowance of the items. The argument in favor of allowing the defendant these items may be thus summarized: The evidence shows beyond dispute that the extra cost of handling the gravel and sand was incurred, and that the demurrage was paid, because of the failure of the machine to do the full work contemplated by the contract, and the District Judge by the special finding above mentioned has so held. From this the inference is drawn that the District Court could not have rejected the items, except on the theory that the damages were too remote, and that in this the court committed error of law.

[3, 4] The argument is, we think, unsound. The courts, it is true, hold as a principle of law that damages which were in the contemplation of the parties, and actually resulted, as the natural, proximate, and certain consequence of a breach of the contract, are recoverable, and

that remote, speculative, or contingent damages are not. It is also true that there are many claims for damages falling so clearly and distinctly on one or the other side of the line that the courts fix their status as a matter of law. But the rule is well established that in the intermediate region of doubt the question whether the damages fall on one or the other side is one of fact. United States v. Morgan, 52 U. S. (11 How.) 154, 13 L. Ed. 643; Benjamin v. Hillard, 64 U. S. (23 How.) 149, 16 L. Ed. 518; Hutchins v. Munn, 209 U. S. 246, 28 Sup. Ct. 504, 52 L. Ed. 776; Herencia v. Guzman, 219 U. S. 44, 31 Sup. Ct. 135, 55 L. Ed. 81. Numerous authorities on these familiar rules are collated in 53 L. R. A. 33, note.

[5] The damages disallowed in this case are in this region of doubt. There was no definite evidence as to the profits or losses of the business, and the charge for extra cost of unloading rested on estimate and not certain data. There was no evidence showing that the plaintiff had notice that the slow work of the machine due to inadequate power would result in the expense of demurrage. In addition to this there was evidence tending to show that the defendant might have minimized the damage by using the old machine at an expense of about $300 until the new could be made satisfactory, and also that the failure of the machine to give satisfaction was due to the lack of skill in operation, rather than lack of adequate power in the motor furnished by the plaintiff. No doubt the District Judge took all these matters into consideration in holding that, while proof had been made that the defendant suffered the damages mentioned in the disallowed items, yet those allowed represented in amount all that could be reasonably charged to the plaintiff as the proximate result of its failure to furnish an adequate motor. Enough has been said to show that this conclusion is not without support in the evidence. This being so, the findings are conclusive.

Looking at the entire record, we think all the special findings of fact made by the court had reasonable support in the evidence, and the judgment must therefore be affirmed.

Affirmed.