**COMMODITY CREDIT CORPORATION v. NORTON.**

No. 9463.

Circuit Court of Appeals, Third Circuit.
Argued Nov. 21, 1947.
Decided April 1, 1948.

H. Kermit Green, of Newark, N. J. (Green & Yanoff, of Newark, N. J., on the brief), for appellant.

Charles S. Barrett, Jr., of Newark, N. J. (Lum, Fairlie & Foster, of Newark, N. J., on the brief), for appellee.

Before MARIS, O'CONNELL and KALODNER, Circuit Judges.

KALODNER, Circuit Judge.

This is an action to recover damages for the loss of certain castor seed oil transported by rail from Norfolk, Va., to Edgewater, N. J. The defendant is Trustee of the last in a series of carriers.

The appeal herein is prosecuted directly from the entry of judgment on a jury verdict against the plaintiff in the court below, there having been no motion for a new trial or for judgment in accordance with the plaintiff's motion for directed verdict.[1]

The questions presented for determination are (1) whether the record required the direction of a verdict for the plaintiff, and (2) whether the trial judge erred in his charge to the jury on the nature and extent of the liability of the defendant.

The oil cargo in controversy arrived by ship at Norfolk in bad condition. To permit further rail transportation, the plaintiff's agents at Norfolk had the barrels in which the oil arrived recoopered and the loose oil put into second hand barrels. The shipment was then delivered to the Norfolk and Western Railway Company which loaded it in four cars[2] and issued its through bill of lading therefor acknowledging receipt in apparent good order and condition. The facts as to the recoopering and repackaging were made known to the railroad's representatives. The oil completed its journey in the same cars, but on arriving at Edgewater a goodly portion of it had leaked out of the barrels and some of the barrels were found in a badly broken condition and collapsed.

The plaintiff relies on the defendant's liability as a common carrier, asserting that liability to be an insurer's, and upon the presumption, said to be effective where the delivering carrier is sued, that the damage occurred on its line. On the basis of the record made below, it is contended that the defendant is liable as a matter of law because (1) the barrels were in actual good order and condition when received and were delivered in bad condition; (2) if the barrels were defective, the defect was patent; (3) if the defect was latent, it had become patent, during the course of the transportation and (4) defendant was negligent in the handling and care of the shipment and such negligence was the proximate cause of the loss.

Examination of the record discloses the following:

A member of the firm which accomplished the recoopering of the barrels testified, by deposition, that the recoopered barrels would withstand ordinary rail transportation, although he conceded that under

---

[1] Although the defendant entertains some doubt as to whether the plaintiff actually moved for a directed verdict, that doubt is not seriously pressed; our examination of the record discloses that the trial judge considered such a motion to have been made, and denied it. The motion and denial were also entered on the docket.

[2] Identified in the record as C&O #8088, NYC #52450, NYC #130842, and PRR #573328.

certain conditions the hoops would creep, the staves would loosen, and the oil would leak. In contradiction a veteran cooper testified, also by deposition, that he had worked on most of the barrels involved and that those barrels would not withstand ordinary rail transportation. There was conflicting testimony as to whether the barrels were properly stowed in the cars: a surveyor for the plaintiff said that there was inadequate bracing and dunnage, and an experienced railroad man produced by the defendant said that the method of stowage was usual and proper. Finally, the defendant adduced evidence that the four cars were shopped at Hagerstown, Md., where the barrels were found to have been leaking; that one car, C&O # 8088, was shopped at Allentown, Pa., and the barrels therein were found to have been leaking; that there was no report of leakage in any of the cars between Allentown and Green Pond Junction on the lines of the Central Railroad of New Jersey; that there was no report of any leakage on the defendant's line between Green Pond Junction and Little Ferry Junction; and that a personal inspection was made of the train of which these cars were a part on the defendant's line between Little Ferry Junction and Edgewater, but no leakage was discovered. There was also evidence from which it could be inferred that while in the possession of the carriers the oil cargo did not meet any accident and was not handled roughly.

Although we do not specifically refer to all the evidence in the case, what we have recited reveals the kind of conflict on all material issues which must be resolved by the jury. The learned trial judge, therefore, in our opinion, did not err in denying the plaintiff's motion to direct the verdict.

We reach then, the plaintiff's assertion of error in the charge. Early in the charge, the jury was instructed that a common carrier is an insurer "except in such a case where, as asserted here, the goods were shipped in containers which seemed to be, to reasonable observation proper, but which contained defects which were not observable, latent defects, which defects caused the loss." After discussing the matter of burden of proof and the facts, the learned trial judge said,

"Now, then, if you believe from the evidence that the barrels, to all seeming, were in a state proper for shipment and that there were no patent or openly observable defects, and that the railroad company accepted them and placed them on the cars required for their shipment,—four cars, as the Court recalls it—and if you find from the evidence that the stowage or stowing of these cars was proper, and if you find that there was nothing unusual in the method of transport, then you would ask yourselves whether or not the questions which I indicated to you have been met; *whether or not there was an observable defect, and whether there was rough handling such as would put the responsibility on the carrier. If you find that there was the ordinary, acceptable handling in the shipment, in the transfers of these various railroads, and if you find that there was no observable defect, then you will apply to those facts, if you so determine, the rule which I have outlined, and there would seem to the Court to be no legal responsibility on the part of the defendant company.* * * * If you find, further, that, having accepted goods which were in proper shape for shipment, that the railroad was then guilty of any mishandling or improper stowage such as would constitute negligence, and that was the proximate cause of the leakage, then you properly could be said to be entitled to find responsibility on the part of the defendant." (Emphasis supplied.)

Preliminarily, it must be noted that we are here dealing with an interstate shipment, and that the service of the defendant "was that of a common carrier furnishing a necessary link in the transportation under the through bill of lading." Galveston Wharf Co. v. Galveston, Harrisburg & San Antonio Ry. Co., 1932, 285 U. S. 127, 134, 52 S.Ct. 342, 344, 76 L.Ed. 659. The bill of lading, of course, was issued pursuant to the Carmack Amendment, 34 Stat. 593, 595, as amended, 49 U.S.C.A. § 20(11). Since it was issued in respect of an interstate shipment pursuant to an act of Congress, "the bill of lading is an instrumentality of such commerce, and the question whether its provisions have been

164

complied with is a federal question to be determined by the application of federal law." Chesapeake & Ohio R. Co. v. Martin, 1931, 283 U.S. 209, 213, 51 S.Ct. 453, 455, 75 L.Ed. 983. Moreover, "The connecting carrier is not relieved from liability by the Carmack Amendment, but the bill of lading required to be issued by the initial carrier upon an interstate shipment governs the entire transportation, and thus fixes the obligations of all participating carriers to the extent that the terms of the bill of lading are applicable and valid." Georgia, Florida & Alabama R. Co. v. Blish Milling Co., 1916, 241 U.S. 190, 194, 195, 36 S.Ct. 541, 543, 60 L.Ed. 948. The principles of the cited cases have recently been reaffirmed. Illinois Steel Co. v. Baltimore & O. R. Co., 1944, 320 U.S. 508, 510, 511, 64 S.Ct. 322, 88 L.Ed. 259; see Mexican Light & Power Co., Ltd., v. Texas Mexican Ry. Co., 1947, 331 U.S. 731, 733, 67 S.Ct. 1440. And although answerable only for damage occurring on its own line, the last carrier, on making delivery in bad condition, is subject to a presumption that the damage occurred on its line. Chicago & Northwestern R. Co. v. Whitnack Produce Co., 1922, 258 U.S. 369, 42 S.Ct. 328, 66 L.Ed. 665.

In the instant case, as in Galveston Wharf Co. v. Galveston, Harrisburg & San Antonio Ry. Co., supra, the bill of lading provides[3] that the carrier in possession of the property covered should be liable as at common law[4] for any loss thereof or damage thereto, with the usual exceptions.

■ At common law, the common carrier is held to strict accountability, being absolutely liable for loss or damage to the goods surrendered to its custody without regard for the exercise of due care, unless, of course, the damage or loss flows from an excepted cause. Chicago & Eastern Illinois R. Co. v. Collins Produce Co., 1919, 249 U.S. 186, 192, 39 S.Ct. 189, 63 L.Ed. 552. The carrier is thus made the virtual insurer of the cargo.[5]

■ It follows from the foregoing that the learned trial judge properly stated what the general liability of the defendant is. However, we believe that the quoted portion of the charge manifests error in the application of the basic principles announced.

■ The error in the charge, we think, is brought into sharp relief by the italics. The learned trial judge instructed the jury that "rough handling" or "ordinary, acceptable handling" would make a difference in the result of the case where there was "no observable defect" in the shipment upon receipt by the carrier. That is not the law. As the cases already cited plainly establish, the carrier is responsible without regard to the exercise of due care, even though the damage or loss be occasioned by

3. The pertinent provisions of the bill of lading are:

"Sec. 1.(a) The carrier or party in possession of any of the property herein described shall be liable as at common law for any loss thereof or damage thereto, except as hereinafter provided.

"(b) No carrier or party in possession of all or any of the property herein described shall be liable for any loss thereof or damage thereto or delay caused by the act of God, the public enemy, the authority of law, or the act or default of the shipper or owner, or for natural shrinkage. * * * Except in case of negligence of the carrier or party in possession (and the burden to prove freedom from such negligence shall be on the carrier or party in possession), the carrier or party in possession shall not be liable for loss, damage, or delay occurring while the property is stopped and held in transit upon the request of the shipper, owner or party entitled to make such request, or resulting from a defect or vice in the property, or for country damage to cotton, or from riots or strikes."

4. The suggestion of the defendant that the phrase "caused by it" as used in the Carmack Amendment changed the common law doctrine of the liability of a common carrier was refuted in Cincinnati, N.O. & T.P. R. Co. v. Rankin, 1916, 241 U.S. 319, 326, 36 S.Ct. 555, 60 L.Ed. 1022, L.R.A. 1917A, 265.

5. Distinguishing the nature of the liability of a common carrier from that of an insurer, the Supreme Court said of the former in Hall & Long v. Nashville & Chattanooga R. Co., 1872, 13 Wall. 367, 372, 80 U.S. 367, 372, 20 L.Ed. 594: "The law raises against him a conclusive presumption of misconduct, or breach of duty, in relation to every loss not caused by excepted perils. Even if innocent, in fact he has consented by his contract to be dealt with as if he were not so."

the .independent act of third persons. See United States v. Morgan, 1850, 11 How. 154, 162, 52 U.S. 154, 162, 13 L.Ed. 643. The manner of handling the cargo, therefore, would be entirely irrelevant except in the event of an affirmative finding by the jury of the existence of a latent defect, or unless the damage or loss is brought within another excepted peril, which would give rise to the application of the rule of negligence. Consequently, a finding that there was no "rough handling" would not require a determination of the cause in favor of the defendant sans the additional finding of a latent defect. And the phrase "no observable defect" is hardly other than the negative equivalent of the bill of lading recitation that the goods were received "in apparent good order and condition" which, if true, nevertheless would not per se reduce the liability of the carrier to that for negligent conduct.

It is true, of course, that when goods "in proper shape for shipment" are received by a carrier, it is liable for negligence which is the proximate cause of the loss or damage, as was stated in the last sentence of the quotation. The statement, however, is inadequate and misleading, fostering, as it does, the inference, previously declared as a matter of law, that failure to handle with due care is a prerequisite to the liability of the defendant.

The error persists in a subsequent portion of the charge to which there was no specific exception, wherein the court said, "If you find, however, that the barrels as recoopered were as set forth in the bill of lading, in good condition, and that it was not because of the defects in the barrels, but because of something the railroad did that this leakage occurred, then, of course, the railroad as an insurer would be responsible." The error is more apparent here, since the liability of the defendant as an insurer is made dependent upon first establishing negligent conduct in the handling of the shipment.

We conclude that while the jury was told the liability of the defendant was that of an insurer, upon the specific application of the rule by the court below to the facts, the jury was erroneously led to believe that in the event it found the goods "in proper shape for shipment" the defendant would be responsible only if it were negligent.

For the reasons stated, we are of the opinion that there was error in the charge which entitles the plaintiff to a new trial.

Accordingly, the judgment will be reversed and the cause remanded for further proceedings not inconsistent with this opinion.