J. C. PENNEY COMPANY, INC., Respondent, *v.* McLEAN TRUCKING COMPANY, Appellant.

First Department, November 20, 1973.

*Samuel B. Weingrad* of counsel (*Weingrad & Weingrad, P. C.,* attorneys), for appellant.

*Jerome G. Greenspan* of counsel (*Simon Greenhill* with him on the brief; *Greenhill & Speyer,* attorneys), for respondent.

McGIVERN, J. P.   This appeal is from an order of the Appellate Term, First Department, dated November 17, 1972, which, by a divided court, reversed an order of the Civil Court, New York County, and granted summary judgment in favor of the plaintiff; the Civil Court had denied summary judgment.

The action was brought by plaintiff to recover for damaged goods.   In its indorsed complaint filed in the Civil Court, the plaintiff averred:  " An action to recover the sum of $1,126.84 for damages for breach of a contract of carriage on a shipment made on or about December 12, 1967 consigned by the plaintiff at Statesville, N. C. to itself at Chicago, Ill., via the facilities of the defendant acting as a common carrier."   While the goods were in transit, a bridge over the Ohio River collapsed, and the plaintiff's shipment was damaged.   The defendant carrier, in its answer, pleaded a general denial, and, as an affirmative defense: " Act of God ".   But the defendant never served a bill of particulars as to such defense, and was precluded; and in an opposing affidavit, the defendant stated he " fell into the error of alleging as a defense that the disaster was an act of God ".

On this sparse state of the pleadings and the papers it is clear that plaintiff established an unrefuted prima facie case by showing delivery of the shipment in good condition, arrival in damaged condition, and the amount of damages, and that the defendant carrier has not met its burden of showing that it was free from negligence and that the damage was due to one of the expected causes, such as an act of God, relieving the carrier of

liability. See, Motor Carrier Act of 1935, as amended (U. S. Code, tit. 49, §§ 301–327), section 219 (U. S. Code, tit. 49, § 319) of which incorporates by reference the Carmack Amendment of 1906, subdivision (11) of section 20 of the Interstate Commerce Act (U. S. Code, tit. 49, § 20, subd. [11]) which was construed in *Missouri Pacific R.R. Co.* v. *Elmore & Stahl* (377 U. S. 134, 137) wherein the Supreme Court noted this statute "codifies the common-law rule "; also, *Commodity Credit Corp.* v. *Norton* (167 F. 2d 161). And this policy having been rendered manifest by controlling authority, the Appellate Term was correct in following it. Indeed, the affidavit of the defendant's attorney who did not even pretend to have any knowledge of the facts, was completely vacuous of facts, was of no probative value, and can be disregarded. (*Cohen* v. *Pannia,* 7 A D 2d 886; *Di Sabato* v. *Soffes,* 9 A D 2d 297, 301; *Leefe* v. *Public Serv. Mut. Ins. Co.,* 14 A D 2d 951; *Georgia-Pacific Corp.* v. *Fort Pit Supply,* 34 A D 2d 742.)

As for the preoccupation of the dissenting opinion herein with that portion of section 1(b) of the uniform bill of lading, which deals with losses caused by " delay ", I would note that the complaint in the Civil Court was not for " delay " in transit, but for damages to the goods shipped.

The order of the Appellate Term, First Department, entered November 20, 1972 should be affirmed, with costs.

STEUER, J. (dissenting). On December 12, 1967, the plaintiff delivered to defendant, a motor carrier, merchandise for delivery. The goods were picked up by the carrier in Statesville, North Carolina. Their destination was Chicago. While the vehicle was passing over a bridge in Ohio the bridge collapsed and the goods were damaged. Plaintiff brought suit for the loss and moved for summary judgment. The Civil Court denied the motions but the Appellate Term, with one Judge dissenting, reversed and granted judgment. I believe that the initial decision was correct.

If I understand the gravamen of the decision in the Appellate Term and the affirmance by the majority here, it is that the defendant, having failed to submit an affidavit by an affiant having knowledge of the facts, raised no issue. While this proposition is indisputable, it has no application here for the simple reason that the plaintiff's proof established the defense. The plaintiff avers that the cause of its loss was the collapse of the bridge. It is nowhere claimed that the failure of the bridge was due to any fault on the part of the defendant, or that the truck

driver was in any wise negligent by being on the bridge at the time. In that state of the record there could be no liability unless the defendant by statute or contract is made an insurer of the roadbed by which its truck traveled.

The plaintiff relies on *Missouri Pacific R. R. Co.* v. *Elmore & Stahl* (377 U. S. 134). The opinion there states that the statute merely codifies the common law and hence the carrier is not an insurer of the goods and is only liable for damage caused by it (p. 137). That is also the limitation stated in the statute (U. S. Code, tit. 49, § 20, subd. [11]). However, upon proof of delivery to the carrier in good condition, the burden of proof is on it to show that the damage resulted from a cause for which it was not liable. The opinion purports to list those causes, naming five such: act of God, the public enemy, the shipper, public authority, or inherent vice in the goods. Assuming that this list is inclusive of all the situations which are exceptions to absolute liability, there is an apparent inconsistency — damage caused by a failure in the highway is not damage caused by the carrier, and placing liability for it on the carrier does not codify the common law. The inconsistency, however, disappears when the decision is properly read. If the reader looks up from the trees and sees the forest, the fact becomes evident that when Mr. Justice Stewart used the word " carrier " he was speaking of railroads. The first authority quoted for the five exceptions is the Interstate Commerce Commission rules, adopted in 1920. Motor carriers did not come within the purview of the statute until the Motor Carrier Act of 1935 (U. S. Code, tit. 49, §§ 301–307). It is perfectly logical to omit from the category of excusable causes of damage any defect in the right of way of a railroad, including bridges, because the railroad was at common law responsible for the maintenance of rails and roadbeds. Furthermore, the rules referred to in the decision do make exception for the situations in which the railroad was excused for damage at common law, namely, where the roadbed was damaged by earthquake, sudden flood or like natural catastrophe. This is the act of God exception. Moreover, all of the cases cited on this point in *Missouri Pacific* (377 U. S. 134, *supra*) are cases in which the carrier was a railroad.

The situation in regard to motor carriers differs in a material aspect. These carriers have no control or duty in regard to the highways they traverse. It is repugnant both to the common law and to common sense to hold that they insure the soundness of bridges maintained by public authority. It might be argued that the fourth exception, " public authority ", covers this situa-

tion. If so, a valid defense has by plaintiff's admission been shown to exist.

It should also be pointed out that the standard form of bill of lading sanctioned by the Interstate Commerce Commission for motor carriers provides: '' Except in case of carrier's negligence, no carrier * * * shall be liable for delay caused by * * * lack of capacity of any * * * bridge.'' It is true the stated exception refers to delay and not to loss. It is, however, difficult to see why the same cause which in effect pronounces that it is not a failure caused by the carrier in the event of delay should be a failure caused by it if the goods are thereby damaged.

I do not indorse the practice of perpetuating error by reading *Missouri Pacific* or any other case as a fundamentalist or a Pharisee reads the Bible, with strict attention to the words rather than the sense. Nor do I accept the argument that an issue is raised because the Ohio bridge may have collapsed due to an act of God. It may have, but if so defendant's failure to come forward with some proof that this was the cause precludes it from any such claim now. Rather, as indicated, dissent is based on the fact that there is no liability at common law for damage so resulting, and the statute makes no change in that respect.

The order of the Appellate Term should be reversed and that of the Civil Court denying summary judgment should be reinstated.

MURPHY and TILZER, JJ., concur with McGIVERN, J. P.; STEUER, J., dissents in an opinion in which NUNEZ, J., concurs.

Order of the Appellate Term of the Supreme Court, First Department, entered on November 20, 1972, affirmed. Respondent shall recover of appellant $60 costs and disbursements of this appeal.