46932. AERO MAYFLOWER TRANSIT COMPANY, INC. v. HARBIN et al.

EBERHARDT, Presiding Judge. Mr. and Mrs. David Harbin were living in Connecticut, where he was employed by IBM. Mr. Harbin was offered employment in Dallas, Texas by CCC Computer Corp., which he accepted, a consideration of employment being that CCC would arrange and pay for the moving of his household goods and furniture and a Mustang automobile from Connecticut to Texas. An official of CCC called Mayflower's representative in Dallas and arranged a conference (between himself, Harbin and the Mayflower representative) at which the arrangements were made, and CCC gave written authorization to Mayflower to effect the moving of the furniture, etc., the cost to be billed to CCC.

At the other end of the line a representative of Mayflower called at the Harbin home, inspected the items to be shipped, and prepared an estimate of the cost. Dates for the pick-up and delivery were settled. When the goods were packed and ready for shipment a bill of lading was prepared showing the items shipped from the Harbins in Connecticut to themselves in Dallas, with costs to be billed to CCC.

The goods were delivered July 1, 1969, but the truck driver

failed to send promptly the delivery documents to Mayflower and because of this there was no billing of CCC until October 13, 1969, and by that time CCC was having financial reverses which made payment of the bill impossible. Bankruptcy followed.

Mayflower then, through a collection agency, demanded payment and now seeks recovery of the shipping charges. Defensive pleadings were filed, depositions taken, and the cases came on for trial before a judge without a jury. At the conclusion of the trial, judgment was entered for the defendant and plaintiff appeals. *Held:*

1. Under § 223 of the Motor Carrier Act (49 USC 323), unless the consignee is an agent, having no beneficial interest in the property, he is generally responsible for the payment of all lawful shipping charges. This has been applied to situations which, in many respects, are very similar to that here. See Pittsburgh, Cincinnati &c. R. Co. v. Fink, 250 U. S. 577 (40 SC 27, 63 LE 1151); National Van Lines v. Herbert, 81 S. D. 633 (140 NW2d 36); Aero Mayflower Transit Co. v. Rae, 203 Misc. 801 (118 NYS2d 895); Aero Mayflower Transit Co. v. Hankey, (La. App.) 148 S. 2d 465.

Our own cases have held that the carrier may collect the charges from the shipper or from the consignee, absent a special contract under which the carrier agrees to relieve one or the other. *Central of Ga. R. Co. v. Willingham,* 8 Ga. App. 817 (70 SE 199); *Seaboard A. L. R. Co. v. Montgomery,* 28 Ga. App. 639 (112 SE 652); *Central of Ga. R. Co. v. Brown,* 42 Ga. App. 278 (155 SE 787). A mere agreement that the goods are to be shipped "collect" does not amount to a special contract relieving the shipper.

Based upon the statute and these cases we would feel bound to hold that the Harbins are liable to Mayflower here, but there is a difference appearing which leads us to affirm the trial court.

The Interstate Commerce Commission has promulgated a rule, duly published in the Federal Register (9 CRF § 1322.1) and having the force of law, providing that

while all shipping charges are to be collected from the shipper upon receiving them, or from the consignee upon delivery, a credit arrangement for payment thereof may be made not exceeding a period of 7 days.

The charges were not collected when the goods were delivered to the Harbins in Dallas. Neither they nor CCC was billed therefor until October 13, more than three months after delivery. An official of CCC testified that if the billing had been made within the seven days allowed by law, CCC could and would have paid them. He also testified that the shipping charges on the goods of the Harbins were a part of the consideration to be paid him for his services, that Harbin had reported as per his contract and had rendered satisfactory services throughout his employment with CCC and that he had thus, in effect, paid CCC for these charges.

Under somewhat similar circumstances it was held in Consolidated Freightways Corp. v. Admiral Corp., 442 F2d 56 that the carrier's violation of the requirement that the charges be collected within seven days from delivery works an estoppel against it to collect from the consignee. (It is noted that the delay here was not due to any act of the Harbins or of CCC but was due to the negligence of its own agent in transmitting the delivery papers to the office where they could be audited and a billing rendered). We think the trial court was correct under the facts of this case.

It is true that there was a dissent in the Consolidated Freightways case, and it may take a decision of the United States Supreme Court to settle the issue as to whether delay in billing works an estoppel, but that case affords the best light now available. Compare *Griffin Grocery Co. v. Penn. R. Co.,* 93 Ga. App. 546 (92 SE2d 254).

*Judgment affirmed. Deen and Clark, JJ., concur.*
ARGUED MARCH 8, 1972—DECIDED APRIL 13, 1972.

*Lipshutz, Macey, Zusmann & Sikes, Charles C. Pritchard, H. William Cohen,* for appellant.

*King & Spalding, A. Felton Jenkins, Jr.,* for appellees.