**O'BOYLE TANK LINES, INC., f/d/b/a M & M Tank Lines, Inc.,**
Plaintiff-Appellant,

v.

**Milton BECKHAM, d/b/a Milton Beckham Company et al.,**
Defendants-Appellees.

No. 79–3853
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

May 1, 1980.

* Fed.R.App.P. 34(a); 5th Cir.R. 18.

Arthur B. Seymour, Atlanta, Ga., for plaintiff-appellant.

James N. Geiger, Perry, Ga., for Beckham & Beckham Cherokee Const.

Smith & Harrington, Will Ed Smith, Eastman, Ga., for Coffee Const. Co.

Before AINSWORTH, FAY and RAN-DALL, Circuit Judges.

AINSWORTH, Circuit Judge:

Plaintiff-appellant O'Boyle Tank Lines, Inc. (O'Boyle) appeals from a summary judgment in favor of defendant-appellee Coffee Construction Company (Coffee) in a suit in which O'Boyle seeks to collect freight charges allegedly due it from Coffee. Because we find there are disputed issues of material fact, we reverse and remand for a trial on the merits.

In late 1975 and early 1976, M & M Tank Lines, Inc. (M & M), a motor carrier and O'Boyle's predecessor in interest, transported fifty tank truck shipments of asphalt from American Oil Company's (Amoco) refinery in Savannah to Fitzgerald, Georgia. Coffee purchased the asphalt to be used by Milton Beckham Company (Beckham), which later became Beckham-Cherokee Construction Company, Inc., for the construction of a road. Apparently, because Beckham was at the time in a precarious financial condition and therefore unable to purchase the asphalt itself, Coffee offered to purchase it for Beckham and later bill the company. This arrangement resulted from an oral agreement between the president of Coffee and Milton Beckham, to which agreement M & M was not a party.

M & M transported the asphalt under separate bills of lading to the Beckham road construction site at Fitzgerald, Georgia. After an unsuccessful attempt to collect freight charges from Beckham, O'Boyle brought suit on July 22, 1977 against Coffee, Milton Beckham, Beckham-Cherokee Construction Company, Inc. and Amoco. Amoco was later dismissed from the suit since it had executed "no recourse" provisions in the bills of lading under which M & M agreed not to hold it liable for freight charges. On June 12, 1978, defendant Coffee moved for summary judgment and the motion was granted on August 3, 1978.

The district court granted Coffee's motion on the ground that Coffee had neither expressly nor impliedly contracted to be liable for the freight charges, and thus as a matter of law no liability could be imposed. The court found that Coffee had not been a party to the contract of carriage, that it had not authorized its name to appear as consignee on the bills of lading, and that Beckham was not Coffee's agent, partner or nominee in receiving the asphalt from M & M at the construction site at Fitzgerald, Georgia. Our review of the record indicates that the court in making these findings improperly resolved genuine factual issues in dispute between the parties.

Regarding interstate shipments of goods, ordinarily the shipper is presumed primarily liable to the carrier for freight charges for the transportation of goods. *Louisville & N. R. Co. v. Central Iron & Coal Co.*, 265 U.S. 59, 67, 44 S.Ct. 441, 443, 68 L.Ed. 900 (1924). This presumption may be rebutted by the bill of lading or other facts and documents which indicate another has the true beneficial interest in the goods being shipped. *Id.* The liability of the consignee for transportation charges may result from an express contract or an implied obligation arising from the consignee's ownership, presumptive ownership, acceptance of the goods, or receipt of the benefits conferred by the carrier. *States Marine International, Inc. v. Seattle-First National Bank*, 524 F.2d 245, 248 (9th Cir. 1975); *Northwestern Pacific Railroad v. Burchwell Co.*, 349 F.2d 497, 498–99 (5th Cir. 1965).

However, since these asphalt shipments were entirely intrastate, Georgia law governs the parties' liability for freight charges. *See* 49 U.S.C. § 1(2)(a). Although no Georgia court has dealt specifically with the factual situation presented by this case, the general rule is that the carrier may collect freight charges from either the shipper or the consignee, absent a special contract under which the carrier agrees to relieve one or the other. *Aero Mayflower Transit Co. v. Harbin*, 126 Ga.App. 72, 73, 190 S.E.2d 91, 92 (1972). In a particular case, a party's liability arises from either an express agreement to be bound or an implied contract to pay the charges resulting from some act such as acceptance or use of the goods. *See Seaboard Air Line Railroad v. Richmond Lumber, Inc.*, 109 Ga.App. 328, 331, 136 S.E.2d 144, 146 (1964).

Here the pleadings, affidavits and accompanying documents indicate that a material question of fact remains as to Coffee's role in the contract of transportation and its interest in the asphalt. The Short Form Bill of Lading evidencing the contract for the delivery of the entire 328,000 pounds of asphalt shows Coffee to be the owner, shipper and consignee of the asphalt. M & M's numbered tank truck bills of lading state that Amoco is the consignor and that Coffee Construction Company care of Milton Beckham or Milton Beckham Company is the consignee. Amoco's shipping tickets also show Coffee attention Milton Beckham or Milton Beckham Company to be the consignee. Appellant O'Boyle claims that these documents establish unequivocally Coffee's participation in the shipping contract and its assumption of liability for freight charges in its capacity as both owner and consignee. Coffee, on the other hand, argues that Beckham is solely liable for the shipping fees since only it and not Coffee had a beneficial interest in the asphalt and Coffee's sole involvement was to accommodate Beckham by paying the purchase price of the product.

In reviewing the granting of a motion for summary judgment, the inference to be drawn from the evidence before the court "must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Lyxell v. Vautrin*, 604 F.2d 18, 21 (5th Cir. 1979). Under this standard, we hold that the district court's resolution of issues on appellee Coffee's motion for summary judgment was premature. There remain disputed issues of material fact concerning Coffee's participation in the contract of shipment and its liability for freight charges, which can only be deter-

mined upon a trial of the merits. Accordingly, we reverse and remand.

REVERSED AND REMANDED.