## ILLINOIS STEEL CO. *v.* BALTIMORE & OHIO RAILROAD CO.

No. 99.   Argued December 16, 1943.—Decided January 3, 1944.

*Mr. Paul R. Conaghan* for petitioner.

*Mr. Francis R. Cross*, with whom *Mr. George E. Hamilton* was on the brief, for respondent.

MR. CHIEF JUSTICE STONE delivered the opinion of the Court.

Decision in this case turns on the proper interpretation to be given to several clauses of the uniform bill of lading

approved by the Interstate Commerce Commission as authorized by §§ 1 (6), 12 and 15 (1) of the Interstate Commerce Act, as amended, 49 U. S. C. §§ 1 (6), 12, 15 (1), which make it the duty of interstate rail carriers to adopt and observe the form and substance of bills of lading approved by the Commission. Matter of Bills of Lading, 52 I. C. C. 671, 685, 686; 64 I. C. C. 347, 351–352; 64 I. C. C. 357; 66 I. C. C. 63; 167 I. C. C. 214; 172 I. C. C. 362; 245 I. C. C. 527.

Petitioner was the consignor upon through bills of lading of a number of rail shipments of sulphate of ammonia for export. The shipments were from Gary, Indiana to Baltimore, Maryland over the lines of connecting railroads, of which respondent was the terminal carrier. Each bill of lading [1] contained a clause, inserted by petitioner, the consignor, in conformity to instructions appearing on the bill, and providing that freight was "to be prepaid"; and also the so-called non-recourse clause which petitioner signed and which read: "If this shipment is to be delivered to the consignee without recourse on the consignor, the consignor shall sign the following statement: The carrier shall not make delivery of this shipment without payment of freight and all other lawful charges. (See Section 7 of conditions.)" [2] Petitioner at shipment paid the freight charges specified in the bills of lading, which were computed at the export freight rate. The bills of lading included a receipt for specified sums paid

---

[1] Specimen forms of the uniform bills of lading, prescribed for interstate rail shipments during the period when the shipments concerned in this action were made, may be found in Consolidated Freight Classification No. 7 (1932) pp. 52–56.

[2] § 7 of the conditions of the bill of lading, so far as relevant, is set out at page 512, infra. The parties have stipulated that the non-recourse clause contained in the bills of lading in this case were in the form quoted in the text. The form approved by the Commission varies slightly in details immaterial here. See Consolidated Freight Classification No. 7, supra, p. 52.

to the carrier "to apply in prepayment of the charges." The record does not disclose who was the owner of the sulphate, or what further relations existed between consignor and consignee.

The parties concede that upon delivery of the shipments at Baltimore, the consignee did not handle the sulphate as required by the provisions of the export tariff, and that the delivery or the method of handling subjected the shipments to the higher domestic freight rate. The parties have also stipulated that respondent is entitled to recover from petitioner, additional freight charges to the extent of the difference between the export rate and the higher domestic rate, unless recovery is barred by the clauses of the bills of lading to which we have referred.

Respondent brought the present suit in the Illinois Superior Court to recover the additional freight due upon the shipments. The Superior Court gave judgment for petitioner, which the Illinois Appellate Court reversed, 316 Ill. App. 516, 46 N. E. 2d 144, and the Illinois Supreme Court denied leave to appeal. We granted certiorari, *post,* p. 721, the interpretation of the uniform bill of lading in the circumstances of this case being a question of public importance.

Pursuant to Congressional authority, the Interstate Commerce Commission has prescribed uniform forms of bills of lading, including that involved in this case. Matter of Bills of Lading, *supra.* In promulgating them, the Commission has stated that it was doing so in the interest of uniformity and to prevent discriminations. 52 I. C. C. 671, 676–677, 678; 64 I. C. C. 357, 363, 364. It has found that the prescribed forms are just and reasonable, 52 I. C. C. 671, 740, and that any other would be unreasonable, 64 I. C. C. 357, 360–361, 364.

The construction of the clauses of a bill of lading, adopted by the Commission and prescribed by Congress for interstate rail shipments, presents a federal question.

*Georgia, F. & A. Ry. Co.* v. *Blish Milling Co.*, 241 U. S. 190, 194–195; *Chesapeake & Ohio Ry. Co.* v. *Martin*, 283 U. S. 209, 212–213. Such has been the consistent ruling of this Court where the question presented concerned the conditions in bills of lading affecting the liability of the carrier such as are required by the Carmack Amendment, as amended, 49 U. S. C. § 20 (11). *Georgia, F. & A. Ry. Co.* v. *Blish Milling Co., supra; Atchison, T. & S. F. Ry. Co.* v. *Harold,* 241 U. S. 371; *St. Louis, I. M. & S. Ry. Co.* v. *Starbird,* 243 U. S. 592; *Gulf, C. & S. F. Ry. Co.* v. *Texas Packing Co.,* 244 U. S. 31, 34; *American Railway Express Co.* v. *Lindenburg,* 260 U. S. 584; *Chesapeake & Ohio Ry. Co.* v. *Martin, supra;* cf. *Peyton* v. *Railway Express Agency,* 316 U. S. 350.

Since the clauses of the uniform bill of lading govern the rights of the parties to an interstate shipment and are prescribed by Congress and the Commission in the exercise of the commerce power, they have the force of federal law and questions as to their meaning arise under the laws and Constitution of the United States. Hence we have jurisdiction to review their determination by the state courts, in a suit by the carrier to recover freight charges. Judicial Code § 237 (b), 28 U. S. C. § 344 (b); *Pittsburgh, C., C. & St. L. Ry. Co.* v. *Fink,* 250 U. S. 577, 581–583; *New York Central & H. R. R. Co.* v. *York & Whitney Co.,* 256 U. S. 406, 408; cf. *Sola Electric Co.* v. *Jefferson Co.,* 317 U. S. 173, 176–177; *Peyton* v. *Railway Express Agency, supra; Southern Railway Co.* v. *Prescott,* 240 U. S. 632, 639–640.

The shipments by petitioner being in interstate commerce, the rail freight rates are those stated in the tariffs filed with the Interstate Commerce Commission. They cannot be lawfully released by the carrier or altered by others who have assumed the duty to pay them. See *Midstate Horticultural Co.* v. *Pennsylvania R. Co., ante,* p. 356; *Pittsburgh, C., C. & St. L. Ry. Co.* v. *Fink, supra,*

581–583. The tariffs do not prescribe who is to pay the freight charges, but subject to the prohibition against unlawful discrimination and the limitations imposed by the uniform bill of lading, the parties to the shipment, as between themselves, are free to stipulate who shall pay them. See *Louisville & Nashville R. Co.* v. *Central Iron Co.,* 265 U. S. 59, 65–67.

Section 7 of the conditions of the uniform bill of lading provides that the owner or consignee shall pay the freight and all other lawful charges upon the transported property, and except in those instances where it may be lawfully authorized to do so, that no railroad carrier shall deliver or relinquish, at destination, possession of the property covered by the bill of lading until all tariff rates and charges have been paid. Cf. § 3 (2) of the Interstate Commerce Act, as amended, 49 U. S. C. § 3 (2). But it further provides that "The consignor shall be liable for the freight and all other lawful charges, except that if the consignor stipulates, by signature, in the space provided for that purpose on the face of this bill of lading that the carrier shall not make delivery without requiring payment of such charges and the carrier, contrary to such stipulation, shall make delivery without requiring such payment, the consignor (except as hereinafter provided [3]) shall not be liable for such charges. . . . Nothing herein shall limit the right of the carrier to require at time of shipment the prepayment or guarantee of the charges. . . ."

---

[3] The exception, inapplicable here, is in the case where a consignee, other than the consignor, is an agent with no beneficial title in the goods, and has notified the carrier of these facts. In such a case the consignee is not "liable for transportation charges . . . (beyond those billed against him at the time of delivery for which he is otherwise liable) which may be found to be due after the property has been delivered to him," but the consignor is liable for such charges. Cf. § 3 (2) of the Interstate Commerce Act, as amended, 49 U. S. C. § 3 (2).

Under these provisions, if the non-recourse clause is not signed by the consignor, he remains liable to the carrier for all lawful charges. The carrier is free to demand payment in advance by the consignor, or it may decline to make delivery to the consignee until the freight charges are paid or guaranteed, or if delivery is made to the consignee without payment, the consignee is also liable for all freight charges. But if the non-recourse clause is signed by the consignor and no provision is made for prepayment of freight, delivery of the shipment to the consignee relieves the consignor of liability, see *Louisville & Nashville R. Co.* v. *Central Iron Co., supra,* 66, n. 3, and acceptance of the delivery establishes the liability of the consignee to pay all freight charges. *Pittsburgh, C., C. & St. L. Ry. Co.* v. *Fink, supra; New York Central & H. R. R. Co.* v. *York & Whitney Co., supra.*

In the light of these long-established rules of liability the facts of the present case raise only a single question, whether the stipulation in the bills of lading for the prepayment of freight restricts the operation of the non-recourse clause so that, despite its presence in the bills of lading, recourse may be had to petitioner for charges in addition to those which it prepaid at shipment, the additional charges arising only by reason of events which occurred on or after the delivery of the shipments to the consignee.

The Illinois Appellate Court thought, and respondent argues here, that this liability was imposed on the consignor only because the prepayment clause was so in conflict with the non-recourse clause as to nullify the latter and thus revive the obligation which, in the absence of that clause, rests on the consignor to pay all lawful charges on his shipments. The question is whether there is such a conflict as to require this result. For we must assume that both clauses were intended by the parties to have some effect, and hence, unless unavoidably in conflict, they

must, so far as they reasonably may, be reconciled so that each will have some scope for operation.

The obvious purpose and effect of the non-recourse clause is to relieve the shipper from liability for freight charges, upon delivery to the consignee. Such a purpose is consistent with an intention that in case of pre-payment of a portion of the freight charge, the carrier should, after delivery, look solely to the consignee for the remainder of the charge. Since, by the uniform bill of lading, the parties to a rail shipment are left free to relieve the consignor from liability by their contract, such an arrangement would be within their competence and would release the consignor from liability to the extent of the unpaid freight charges.

It could not be said that by agreeing to pay a part of the charges in advance, the consignor has agreed to pay more, or that the non-recourse clause would cease to be effective as to the unpaid charges because the consignor had paid or undertaken to pay some of them. The words of § 7 of the conditions of the bill of lading are to the effect that if the consignor stipulates that the carrier shall not deliver "without requiring payment of such charges" and the carrier makes delivery, the consignor "shall not be liable for such charges." In this context, "such charges" are the lawful charges which the consignor has not paid or stipulated to pay in advance.

We discern no policy underlying the uniform bill of lading or in the provisions of § 7 which would deny the application of the non-recourse clause where the consignor has stipulated for advance payment of some but less than all of the lawful charges. And no plausible reason is advanced why an agreement by the consignor to pay a part of the lawful charges should be deemed to deprive him of the benefit of the non-recourse clause beyond the amount he has undertaken to pay.

We think that the same considerations point here to the reconciliation of the conflict which the Illinois court thought to exist in this case. For in the present circumstances we cannot say that the prepayment clause contemplated payment by the consignor of the additional charges demanded at the domestic tariff rate and hence we find no irreconcilable conflict between the prepayment and non-recourse clauses.

Petitioner's stipulation was that the freight charges were "to be prepaid" and the bill of lading acknowledged receipt of specified sums "to apply in prepayment of the charges." Hence the stipulation was for an obligation to be performed in advance of the transportation or at the most in advance of delivery to the consignee. This obligation could not have contemplated payment of more than all the lawful charges upon the consignor's shipment as tendered and transported in conformity to the billing. No more could prepayment be made, before either shipment or delivery, of a charge which might never be incurred, and which could be, only after the transportation was completed and delivery made to the consignee.

It is familiar experience, as in this case, that undercharges may occur which could not be subject to prepayment either because they are not lawful charges on the shipment as tendered and billed, or because they depend upon events occurring after the transportation has been completed. In either case we conclude that the reasonable construction of the prepayment clause is that, with respect to these charges, it did not, either by its design or by the intention of the parties, curtail the operation of the non-recourse clause, so as to deprive petitioner, the consignor, of the immunity from liability for which it was entitled to stipulate by the non-recourse clause. See *Chicago Great Western Ry. Co.* v. *Hopkins,* 48 F. Supp. 60. This construction does not leave the carrier unprotected with respect to the collection of unanticipated

freight charges, for it may always insure their collection by demanding the consignor's guarantee of all charges, pursuant to § 7 of the conditions of the uniform bill of lading, a provision which presupposes that the prepayment of freight clause is not as broad as the authorized guarantee.

In the special circumstances of this case we have no occasion to consider the broader contention of petitioner that the prepayment clause contemplated an undertaking upon its part to pay only the amount of freight charges specified on the face of the bill of lading, whether or not they were computed at the lawful rate on the shipments as tendered and billed.

*Reversed.*

MR. JUSTICE ROBERTS concurs in the result.