The ATCHISON, TOPEKA AND SANTA FE RAILWAY COMPANY, Plaintiff,

v.

C–G–F GRAIN COMPANY, a corporation, Defendant.

The ATCHISON, TOPEKA AND SANTA FE RAILWAY COMPANY, Plaintiff,

v.

AGREX, INC., a corporation, (formerly Koppel, Inc.), Defendant.

Civ. A. Nos. 76–204–C5, 77–4212.

United States District Court, D. Kansas.

Oct. 15, 1982.

Roth A. Gatewood, Topeka, Kan., for plaintiff.

John Jordan, of the firm of Learned, Foley & Jordan, P.A., Wichita, Kan., for defendant C–G–F Grain Co.

George Yarnevich, Salina, Kan., Lloyd John Osborn, Fritz R. Kahn, Washington, D.C., for defendant Agrex, Inc.

## MEMORANDUM AND ORDER

O'CONNOR, Chief Judge.

These cases are before the court on the parties' stipulations of facts. Because the two cases involve nearly identical facts and present the court with the same issue of law, we will consider the cases together. The stipulated issue to be decided is: to

what extent, if any, may a consignor who has prepaid freight charges and has executed the non-recourse clause (Section 7) of the bill of lading still be held liable for any additional freight charges subsequently determined to be due. The parties have submitted briefs on the issue, and the court is prepared to rule.

The facts having been stipulated will not be repeated in detail. Nonetheless, a brief background statement may prove helpful. The defendants in these actions, C–G–F Grain Company and Agrex, sought to ship grain from points in Nebraska to points in California. To that end, they contracted with the plaintiff in both of these law suits, The Atchison, Topeka and Santa Fe Railway Company, for the shipment of the grain. In each case, the shipping agreement was embodied in a bill of lading that complied with the provisions of the Uniform Bill of Lading Act. The bill of lading for each shipment stated that the freight charges were "prepaid" or "to be prepaid." It is not disputed that the defendant shippers did, in fact, prepay the Part 5 tariff rate, which the parties then believed to be the rate required by law. For each of the bills of lading, the shippers executed the "non-recourse clause" (Section 7). This served to notify the plaintiff Santa Fe that the consignors (shippers) assumed no liability for freight charges beyond those they agreed to prepay. For any additional charges, the plaintiff would have to look to the consignees.

At the time the parties agreed that the Part 5 tariff would and should apply to their shipments, such a conclusion was subject to some dispute in the industry. The plaintiff and the defendants were aware of the dispute. Subsequently, the Interstate Commerce Commission issued an opinion stating that the higher Part 4 tariff should apply to the shipments. Defendant Agrex (under its previous name, Koppel, Inc.), sought judicial review of the Commission's decision in the Tenth Circuit Court of Appeals. The Tenth Circuit affirmed the action of the Commission. *Koppel, Inc. v. United States of America and Interstate Commerce Commission*, 612 F.2d 1264 (10th Cir.1979).

Plaintiff Santa Fe commenced these lawsuits to recover undercharges in the amount of $277,759.39, plus interest, from Agrex, Inc., and $46,837.24, plus interest, from C–G–F Grain Company. These amounts reflect the difference between the Part 5 tariff actually paid by the defendant shippers and the higher Part 4 tariff, which should have been assessed. Plaintiff made no attempt to recover the undercharges from the respective consignees, and is now barred from doing so by the applicable statute of limitations.

Simply stated, the issue before this court is whether the subsequent discovery by the parties that a higher tariff should have been applied in any way alters the liability of the shippers under the contract, which provided that the shipments were to be prepaid by the shippers and without recourse against them. The plaintiff argues that the public policy underlying the Interstate Commerce Act requires a strict application of tariffs, notwithstanding the agreement of the parties. According to the plaintiff, "anything less than full compliance [with the applicable tariff] would constitute a preference and would be an illegal act." We believe that plaintiff overstates the strength of this policy.

In 1923, in discussing tariffs established by the Interstate Commerce Commission, the United States Supreme Court noted that the charges were fixed by law and could not be reduced by a carrier. *Louisville and Nashville Railroad Co. v. Central Iron and Coal Co.*, 265 U.S. 59, 63, 44 S.Ct. 441, 68 L.Ed. 900 (1923). The Court stated, however, that the strictness of the tariffs did not require that the shipper pay the full cost of shipment in all cases.

But delivery of goods to a carrier for shipment does not, under the Interstate Commerce Act, impose upon a shipper an absolute obligation to pay the freight charges. *The tariff did not provide when or by whom the payment should be made. As to these matters carrier and shipper were left free to contract,* subject to the

rule which prohibits discrimination. The carrier was at liberty to require prepayment of freight charges; or to permit that payment to be deferred until the goods reached the end of the transportation.

*Id.* at 65–66, 44 S.Ct. at 442 (emphasis added).

Therefore, there is no immutable requirement that the shipper bear the entire cost of shipment, under the applicable tariffs. It is enough that someone is liable for the freight charges; it need not be the shipper. *Chicago Great Western Railway Co. v. Hopkins,* 48 F.Supp. 60, 61 (D.Minn.1942).

In recognition of the ability of the parties to allocate the responsibility to pay the tariff, the Interstate Commerce Commission prescribed uniform forms for bills of lading, such as those involved in this case. *See Illinois Steel Co. v. B. & O. Railroad Co.,* 320 U.S. 508, 510, 64 S.Ct. 322, 323, 88 L.Ed. 259 (1943). The uniform bills of lading contain optional clauses for the prepayment of the shipping charges and for non-recourse against the consignor (shipper). In *Illinois Steel Co., supra,* the Supreme Court considered a similar bill of lading and gave effect to both the prepayment clause and the non-recourse clause.

It is familiar experience, as in this case, that undercharges may occur which could not be subject to prepayment, either because they are not lawful charges on the shipment as tendered and billed, or because they depend upon events occurring after the transportation has been completed. In either case we conclude that the reasonable construction of the prepayment clause is that, with respect to these charges, it did not, either by its design or by the intention of the parties, curtail the operation of the non-recourse clause, so as to deprive petitioner, the consignor, of *the immunity from liability for which it was entitled to stipulate by the non-recourse clause. See Chicago Great Western Ry. Co. v. Hopkins,* 48 F.Supp. 60. This construction does not leave the carrier unprotected with respect to the collection of unanticipated freight

charges for it may always insure their collection by demanding the consignor's guarantee of all charges pursuant to § 7 of the conditions of the uniform bill of lading, a provision which presupposes that the prepayment of freight clause is not as broad as the authorized guarantee.

320 U.S. at 515–16, 64 S.Ct. at 326 (emphasis added).

Thus, the Supreme Court has afforded great weight to the non-recourse clause of the uniform bill of lading.

Although we are unable to find any cases precisely on point, we recognize that the non-recourse clause has been found controlling by other courts. For example, in *General Movers, Inc. v. Jernberg Forgings Co.,* 516 F.2d 1341 (7th Cir.1975), the court was confronted with a similar situation and concluded that the non-recourse clause of the bill of lading should be given "full legal effect." There, the plaintiff carrier shipped goods for the defendant shipper pursuant to a uniform bill of lading. The shipper had agreed to prepay the charges, and the payment was to be without recourse. After the shipment, the carrier complained that the goods had been misdescribed, and that a higher rate should have been assessed. The shipper then filed the lawsuit to recover the undercharges. The Seventh Circuit affirmed the decision of the district judge, who stated:

In opposition to the motion to dismiss, plaintiff argues that the non-recourse section should not be enforced where, as here, the undercharges are attributable to an unintentional error by the shipper. This position lacks merit.

First, use of the non-recourse language has been authorized without reservation by the Interstate Commerce Commission. *See In re Bills of Lading,* 52 I.C.C. 671, 721 (1919), 64 I.C.C. 357 (1921), 66 I.C.C. 63 (1922), 80 I.C.C. 305 (1923), 245 I.C.C. 527 (1943). More importantly, it is well settled that a bill of lading embodies the formal agreement between the shipper, carrier, and consignee and, as such, the non-recourse clause is an appropriate matter for contractual negotiations and

inclusion. Hotchkiss, *Bills of Lading*, 22–23, 25–29 (1928); Annot., 88 L.Ed. 266 (1944); 13 Am.Jur.2d, *Carriers* § 477. Therefore, since the complaint makes no allegation of fraud, illegality, or unequal bargaining power, the provision must be accorded full legal effect.

By these bills of lading, then, General Movers relinquished its right to proceed against Jernberg for freight charges over and above the prepaid amount.

516 F.2d at 1343.

In the instant case, as in *Jernberg*, a mistake resulting in a charge lower than that required by the lawful tariff cannot be held to increase the shipper's liability when the bill of lading specifies that the shipment was to be delivered to the consignee without recourse against the consignor (shipper). Under the terms of the bill of lading, which control, the carrier must look to the consignee for any additional charges. Santa Fe relinquished its right to proceed against C–G–F Grain Co. and Agrex, Inc. for freight charges over and above the prepaid amounts.

Plaintiff argues that it might be barred from proceeding against a consignee because the consignee could utilize the defense of estoppel, as in *Southern Pacific Transportation Co. v. Campbell Soup Co.*, 455 F.2d 1219 (8th Cir.1972). In *Campbell Soup*, the court held that the carrier was barred from recovering the freight charges from the consignee because the consignee had already paid the charges to the consignor. That case is not applicable to the cases at hand. First, there is no indication in the cases now before us that the consignees paid the freight charges to the consignors. Second, plaintiff's argument is entirely speculative. It cannot apply to this case because plaintiff has made no attempt to recover the additional charges from the consignees and is now barred from doing so, not by a claim of estoppel, but by the statute of limitations. We conclude that plaintiff's inability to recover from the consignees in the cases at bar is directly attributable to the plaintiff's own inaction. It would be unfair to the defendants if this court were to allow the plaintiff to recover from the defendants amounts for which the consignees were legally liable. Plaintiff's failure to pursue its remedies against the consignees does not in any way change the liability of the defendant shippers under the bills of lading.

IT IS THEREFORE ORDERED that judgment be entered in favor of the defendant, C–G–F Grain Company, and against the plaintiff, The Atchison, Topeka and Santa Fe Railway Company, in Case No. 76–204–C5. IT IS FURTHER ORDERED that judgment be entered in favor of defendant, Koppel, Inc. (now known as Agrex, Inc.), and against the plaintiff, The Atchison, Topeka and Santa Fe Railway Company, in Case No. 77–4212.