**Tony CARNA, t/d/b/a T.C. Trucking Company, Plaintiff,**

v.

**BESSEMER CEMENT COMPANY, Defendant.**

**Civ. A. No. 82–2348.**

United States District Court, W.D. Pennsylvania.

March 15, 1983.

---

**7.** *U.S. v. Neustadt, supra,* at 711, n. 26, 81 S.Ct. at 1302 n. 26. *Accord, Allen v. U.S.,* 527 F.Supp. 476, 492 (D.Utah 1981).

Sally A. Davoren of Pillar & Mulroy, Pittsburgh, Pa., for plaintiff.

Thomas L. Allen, Pittsburgh, Pa., for defendant.

## MEMORANDUM OPINION

MENCER, District Judge.

This is an action to recover freight charges for the transportation of cement in interstate commerce. The shipments were made under uniform bills of lading prescribed by the Interstate Commerce Commission for use in interstate shipments. *See In re Bills of Lading,* 52 I.C.C. 671 (1919). The parties have filed cross motions for summary judgment. The plaintiff's motion is denied. The defendant's motion is granted for the reasons set forth below.

We find after a review of the entire record that no genuine issue of material fact exists in this case. Fed.R.Civ.P. 56(c). There is no dispute that T.C. Trucking Company (T.C.) actually took possession of and transported from Bessemer Cement Company (Bessemer) cement in the amount claimed by the plaintiff. The only issue to be resolved is a legal one, that is, did Bessemer effectively sign the "non-recourse" clause found on each of the bills of lading involved in the shipments for which T.C. seeks payment of their transportation charges. If Bessemer did sign the non-recourse clause, they are free of any liability for the cost of shipping the cement and T.C. must look to the purchaser of the cement for payment of the transportation charges. *See Illinois Steel Company v. Baltimore & Ohio Railroad Company,* 320 U.S. 508, 515, 64 S.Ct. 322, 326, 88 L.Ed. 259 (1944); *Atchison, T. & S.F. Ry. Co. v. Midland Cooperatives, Inc.,* 306 F.Supp. 723, 726 (E.D.Okl. 1967). We rule here that Bessemer did sign the non-recourse provision and, therefore, is entitled to judgment as a matter of law.

## FACTS

Between April 22, 1982 and July 19, 1982, T.C. transported 1,884.52 tons of cement from Bessemer's plant in Bessemer, Pennsylvania to the facilities of Alpha Concrete Corporation in South Euclid and Cleveland, Ohio. In support of its motion, T.C. has submitted copies of the bills of lading governing these shipments. Bessemer does not contest the validity of these bills of lading and, in fact, relies on them in support of its own motion. Section 7 of the conditions applicable to these bills of lading provides as follows:

> The consignor shall be liable for the freight and all other lawful charges, except that if the consignor stipulates, by signature, in the space provided for that purpose on the face of this bill of lading that the carrier shall not make delivery without requiring payment of such charges and the carrier, contrary to such stipulation shall make delivery without requiring such payment, the consignor . . . shall not be liable for such charges.

The bills of lading in question here were prepared by Bessemer and contain on their face a clause which states:

> Subject to Section 7 of conditions, of applicable bill of lading, if this shipment is to be delivered to the consignee without recourse on the consignor, the consignor shall sign the following statement:
>
> The carrier shall not make delivery of this shipment without payment of freight and all other lawful charges.

This provision is generally referred to as the non-recourse clause. Below this provision is a space for the "Signature of Consignor". On each of the bills of lading, Bessemer pre-printed the words "BESSEMER CEMENT CO." in this space.

## LEGAL ISSUE

The only question left for resolution is whether, by preprinting its name in the space provided for the consignor's signature, Bessemer "signed" the non-recourse provision thereby avoiding liability for the transportation charges.

## DISCUSSION

The Federal Bill of Lading Act, 49 U.S.C.A. §§ 81–124 (West 1951), governs the use of bills of lading in interstate shipping. The Interstate Commerce Commission pursuant to the Interstate Commerce Act adopted the form of uniform domestic bill of lading involved here. *Bills of Lading,* 52 I.C.C. 671. We have, however, been unable to locate any federal statutory or decisional law directly applicable to the question of what constitutes a signature for purposes of the non-recourse clause found on these uniform domestic bills of lading.

 Although the Federal Bills of Lading Act has essentially pre-empted the field as regards questions of law pertaining to interstate shipments, where, as here, there is no applicable federal law we believe it appropriate for a court to turn to analogous situations governed by common law and the Uniform Commercial Code for guidance.

T.C. has urged throughout its argument on the motions that to "sign", as used in the non-recourse clause found on these bills of lading, means to affix a party's actual handwritten signature. It is Bessemer's position that the pre-printed company name constituted Bessemer's signature for purposes of the non-recourse clause. "Generally, in the absence of a statute otherwise providing, a signature may be affixed by writing by hand, by printing, by stamping, or by various other means." 80 C.J.S. *Signatures* § 7 (1953). It appears to be settled under the common law that a printed name on an instrument which is intended to have the force of a signature is valid and thus will have the intended effect. *Roberts v. Johnson et al.,* 212 F.2d 672, 674 (10th Cir. 1954). *See also Joseph Denunzio Fruit Co. v. Crane et al.,* 79 F.Supp. 117, 128 & n. 16 (S.D.Cal., C.D.1948); *Commonwealth Department of Transportation v. Ballard,* 17 Pa. Commonwealth Ct. 310, 331 A.2d 578 (1975).

The Uniform Commercial Code also provides some guidance on this issue of what constitutes a signature on a business document. Article Seven of the Code governs those questions regarding bills of lading which are not covered by federal law. This article displaced the Uniform Bills of Lading Act which had previously been the law in every state. J. White & R. Summers, Handbook of the law under the Uniform Commercial Code § 21–2 (2d ed. 1980).[1] Under the Uniform Commercial Code, § 1–201(39), the term "signed" is defined as including "any symbol executed or adopted by a party with present intention to authenticate a writing." The Official Comment to § 1–209(39) provides that this definition of signed is designed to make it "clear that as the term is used in this Act a complete signature is not necessary." The Official Comment continues by noting that:

> Authentication may be printed, stamped or written; it may be by initials or by thumbprint. It may be on any part of

---

1. The current codification of the Uniform Commercial Code in Pennsylvania is found at 13 Pa.Cons.Stat.Ann. §§ 1101–9507 (Purdon 1982 pamph.). Those sections of the Code applicable to bills of lading are at 13 Pa.Cons.Stat. Ann. §§ 7101–7603.

the document and in appropriate cases may be found in a billhead or letterhead. No catalog of possible authentications can be complete and the court must use common sense and commercial experience in passing upon these matters. The question always is whether the symbol was executed or adopted by the party with present intention to authenticate the writing.

■ The defendant has referred us to a Ninth Circuit decision which, although not entirely on point factually, is helpful in our analysis of the situation at bar. In that case the issue was whether the district court had erred in holding that a financing statement, as provided for in Article Nine of the Uniform Commercial Code, was not signed because the creditor corporation had typewritten its name and the name of its credit manager in the appropriate spaces rather than providing handwritten signatures. The circuit court found, after reviewing that section of the Arizona code which is analogous to U.C.C. § 1–201(39) and the comments thereto, that the typewritten names objectively manifested the corporation's intention to authenticate the financing statement and that any other interpretation would be contrary to commercial experience and business practices. *In re Save-On Carpets of Arizona, Inc. v. Trend Mills,* 545 F.2d 1239 (9th Cir.1976). While it is true that the instant case is distinguishable from the case just discussed, the factual differences in the two serve only to buttress our belief that the printed name involved here constituted a signature for the purposes of the bill of lading non-recourse clause. The purpose of a financing statement is to give notice to a party's potential creditors that that party does not hold clear title to what might otherwise appear to be a valuable asset. On the other hand, a bill of lading is a contract between a consignor and a carrier which sets out the conditions under which the carrier's agreement to transport the consignor's goods will be performed. The hauling done by T.C. during the period under consideration was agreed to after extensive discussion involving both the parties and their attorneys regarding the conditions under which the hauling would be undertaken. If T.C. had questions regarding Bessemer's intention to exercise its non-recourse option it could have inquired into them at the time this relationship began. They did not and as a result they are before this Court seeking recovery for transportation charges they were obligated to collect from the consignee, Alpha Concrete Corporation. Our ruling here, that Bessemer effectively signed the non-recourse clause on the bills of lading governing the transactions involved in this lawsuit, precludes T.C. from seeking recovery against Bessemer and compels entry of summary judgment against T.C. and in favor of Bessemer in this case.

The defendant has also filed a motion to compel production of documents in this case. Our granting of the defendant's motion for summary judgment eliminates the need for any ruling regarding this motion to compel.

An order will be entered granting the defendant's motion for summary judgment.