## THUNDERBIRD MOTOR FREIGHT LINES, INC., a corporation, Plaintiff-Appellee,

v.

## SEAMAN TIMBER COMPANY, INC., a corporation, Defendant-Appellant.

### No. 83–7482.

United States Court of Appeals, Eleventh Circuit.

June 18, 1984.

James J. Robinson, Dwight L. Mixson, Jr., Birmingham, Ala., for defendant-appellant.

Carl E. Johnson, Birmingham, Ala., for plaintiff-appellee.

Before HILL and HENDERSON, Circuit Judges, and TUTTLE, Senior Circuit Judge.

---

JAMES C. HILL, Circuit Judge:

Sometime prior to January 27, 1982, Rigdon Box and Lumber Company (Rigdon), an Indiana company, contracted to purchase lumber from Seaman Timber Company (Seaman), an Alabama Company. Seaman typically transports lumber it sells in its own trucks, but Rigdon insisted on making its own arrangements to obtain the lumber from Seaman. Rigdon therefore contacted Thunderbird Motor Freight Lines (Thunderbird); and, acting on Rigdon's directions, Thunderbird picked up eighteen shipments of lumber from Seaman in Alabama and delivered the lumber to Rigdon in Indiana. Upon learning that Rigdon was insolvent and unable to pay the freight charges, Thunderbird filed suit in the district court in an effort to recover the unpaid charges from Seaman. The district court entered judgment in favor of Thunderbird, and Seaman appealed. We reverse.

. The parties are in agreement as to the relevant facts. Each of the shipments consisted of various quantities of lumber purchased on account by Rigdon from Seaman. Rigdon then contacted Thunderbird and requested Thunderbird to pick up the lumber at Seaman's place of business and deliver it to Rigdon. Thunderbird would arrive unannounced at various unscheduled times at Seaman's place of business and request the lumber. After obtaining a signed receipt from Thunderbird for the lumber, Seaman would make the lumber available to Thunderbird for transportation and help Thunderbird load the lumber on its trucks. In each instance, Rigdon selected Thunderbird as the carrier and made all arrangements with Thunderbird concerning the times of shipment, destination, risk of loss, freight rate, and terms of payment. Seaman never made any of the shipping arrangements with Thunderbird and had no particular knowledge of or control over any of the shipping contracts made between Thunderbird and Rigdon. (The sales from Seaman to Rigdon were f.o.b. Seaman's factory.)

Thunderbird introduced into evidence at the district court a bill of lading for each shipment. Each bill of lading is a straight bill of lading drafted to conform to the terms of the uniform bill of lading, as promulgated by the Interstate Commerce Commission under the Interstate Commerce Act, 49 U.S.C. § 16 *et seq.* *See generally Illinois Steel Company v. Baltimore & Ohio Railroad,* 320 U.S. 508, 64 S.Ct. 322, 88 L.Ed. 259 (1944). The bills of lading provided (as do all bills of lading in compliance with the uniform bill of lading) that:

> Subject to section 7 of the conditions, if this shipment is to be delivered to the consignee without recourse on the consignor, the consignor shall sign the following statement.

> The carrier shall not make delivery of this shipment without payment of freight and all other lawful charges.

Both in the district court and on appeal, Thunderbird has relied heavily on Seaman's failure to sign this exonerating provision. The evidence in the district court demonstrated, however, that Thunderbird had not presented any of the bills of lading to Seaman, and it appeared that Seaman never signed the form on any bill "certify[ing] that [Seaman] is familiar with all the bill of lading's terms and conditions ...."

In resolving this case in favor of Thunderbird, the district court relied on section 42 of the Interstate Commerce Act, which states that "the person named in the bill as the person from whom the goods have been received for shipment" is the consignor. 49 U.S.C. § 122. Thunderbird argues that this provision denominates Seaman as the shipper by statutory definition and that Seaman's failure to make an express shipping contract should not allow it to escape the designation of shipper. Following this line of reasoning, the uniform bill of lading would serve as the implied contract between the parties. *Atlantic Coast Line Railroad v. Clinchfield Fuel Co.,* 94 F.Supp. 992, 994 (W.D.S.C.1954); *Western Maryland Railway v. Cross,* 96 W.Va. 666, 123 S.E. 572 (1924). Thus, Seaman would be liable to Thunderbird under the general rule that the shipper-consignor is presumed to be primarily liable to the carrier for

freight charges on interstate shipments of goods. *See O'Boyle Tank Lines, Inc. v. Beckham,* 616 F.2d 207, 209 (5th Cir.1980). Thunderbird contends that Seaman could have protected itself by obtaining the bills of lading and signing the section 7 no recourse clauses. *See Illinois Steel,* 320 U.S. at 511, 64 S.Ct. at 324.

We do not agree that the above analysis is correct. It is true that the consignor will be liable for the freight charges if he does not sign the section 7 no recourse provision. Nevertheless, in this case, there was not sufficient evidence to prove that Seaman was the consignor, despite the statutory definition. *Cf. Georgia Fabric Corp. v. Penn Central Transportation Co.,* 150 Ga.App. 551, 258 S.E.2d 260 (1979) (defendant not liable absent evidence it was shipper); *Emery Air Freight v. Crane,* 312 N.W.2d 722 (S.D.1981) (defendant not liable absent evidence it was party to contract). As the Supreme Court stated in *Louisville & Nashville Railway v. Central Iron & Coal Co.,* 265 U.S. 59, 44 S.Ct. 441, 68 L.Ed. 900 (1924):

> For the shipper is presumably the consignor; the transportation ordered by him is presumably on his own behalf; and a promise by him to pay therefor is inferred (that is, implied in fact), as a promise to pay for goods is implied when one orders them from a dealer. But this inference may be rebutted, as in the case of other contracts. It may be shown, by the bill of lading or otherwise, that the shipper of the goods was not acting on his own behalf; that this fact was known by the carrier; that the parties intended not only that the consignee should assume an obligation to pay the freight charges, but that the shipper should not assume any liability whatsoever therefor; or that he should assume only a secondary liability.

265 U.S. at 67–68, 44 S.Ct. at 443 (footnote omitted). Although Thunderbird argues that this language has been invalidated by the promulgation of the "new" uniform bill of lading by the ICC, which specifically includes the section 7 exclusionary clause, *see In re Bills of Lading,* 52 I.C.C. 671

(1919), *modified* 64 I.C.C. 357 (1921), *modified,* 66 I.C.C. 63 (1922), we do not agree. In promulgating the uniform bills, the I.C.C. clearly assumed that the consignor would be the party with whom the contract of transportation was made. *See* 52 I.C.C. at 721 ("consignor, being the one with whom the contract of transportation is made"), *quoted in Southern Pacific Transportation Co. v. Commercial Metals,* 456 U.S. 336, 343, 102 S.Ct. 1815, 1820, 72 L.Ed.2d 114 (1982). Indeed, this court recently stated in *O'Boyle* that "[t]his presumption may be rebutted by the bill of lading or other facts and documents which indicate another has the true beneficial interest in the goods being shipped." 616 F.2d at 209 (citing *Louisville & Nashville Railway*).

In this case, there was no evidence from which the district court could properly find an implied-in-fact contract between Seaman and Thunderbird. Rigdon contracted directly with Thunderbird for delivery of the lumber; the only contact between Seaman and Thunderbird occurred when Thunderbird picked up the lumber at Seaman's yard. In such a case, Rigdon, admittedly the consignee, was also the shipper. Seaman simply had no interest in the arrangements between Rigdon and Thunderbird whatsoever. The cases cited by the district court and by Thunderbird in which the court holds that the terms of the uniform bill of lading will be implied into the parties' contract are not applicable in this situation. *See Atlantic Coast Line Railroad; Western Railway.* In those cases, there was sufficient evidence from which the court could find that the party in the position of Seaman had implicitly contracted with the common carrier for the shipment of the goods—for example, by making the contractual arrangements. Having properly implied a contract, it was reasonable for the court to look to the uniform bill of lading for the terms of that contract. In this case, however, there was no basis for a finding of an implied contract; therefore, the provisions of the uniform bill of lading

and the statutory definitions to be used in interpreting that bill do not apply.

We view the statute as defining the status of the parties to the contract, express or implied. We do not view the statute as creating liability in this case when no evidence is present connecting Seaman to the transportation arrangements. This lack of evidence is fatal to Thunderbird's claim. The law is clear that, as a contracting party, Seaman would not be allowed to make a transportation contract at variance with the uniform bill of lading, but this does not mean that one not involved in any business relationship with the motor carrier might nevertheless be bound to the terms of a bill of lading entirely the result of business dealings between the carrier and another party.

The judgment of the district court is REVERSED.