**In re K.G.L. CONTRACTING SERVICES, INC., Debtor.**

**K.G.L. CONTRACTING SERVICES, INC., Plaintiff,**

**v.**

**COULTER ELECTRONICS, INC. d/b/a Coulter Diagnostics, Defendant.**

**Bankruptcy No. 83–0084–BKC–AJC. Adv. No. 86–0203–BKC–AJC–A.**

United States Bankruptcy Court, S.D. Florida.

July 31, 1990.

Scott Alan Orth, Ricardo Torres, Jr., for debtor.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

A. JAY CRISTOL, Bankruptcy Judge.

#### BACKGROUND

This cause came on before the Court for trial on October 25 and 26, 1989. The trial was continued to January 3, 1990, then to March 29, 1990, and was concluded on March 30, 1990. The Court, during the course of trial heard witnesses from both sides, accepted legal arguments from counsel for each of the parties and, received numerous exhibits into evidence.

K.G.L. Contracting Service, Inc. (hereinafter KGL), filed an adversary complaint seeking damages for unpaid transportation charges for goods actually shipped and delivered in late 1980 through the end of 1981. These transportation charges included the following categories: billed but unpaid shipments; unbilled and unpaid ship-

ments; late charges for shipments that were paid beyond seven (7) days after shipment; fuel surcharges; and fuel surcharges on backhauls of Coulter Electronics, Inc. (hereinafter CE) specially designed pallets.

KGL's claim was voluntarily reduced during pretrial discovery as CE provided evidence of payment for specific shipments. The Court further narrowed the issues in a pretrial ruling when it granted partial summary judgement to CE based upon its affirmative defense that certain claims asserted by KGL were brought beyond the statute of limitations. At that time the Court ruled that KGL could not recover on shipments for which payment was due more than five (5) years prior to the commencement of this action. The Court reserved for trial the issue of whether a shorter period (four year statute) was applicable. If a five year statute is applicable then KGL may recover the charges otherwise supported by the evidence. If a four year statute is applicable, all of KGL's claims would be time barred.

As of the opening of trial in this cause, KGL (in accordance with this Court's ruling on the statute of limitations) was seeking the following damages from CE;

| | |
|---|---|
| unpaid shipments | $111,102.71 |
| late charges | $ 1,963.17 |
| fuel surcharges | $ 204.94 |
| pallets—fuel surcharges | $ 4,924.20. |

Accordingly, at trial, KGL sought judgement for $118,195.02 plus interest beginning seven (7) days after the date of each shipment.

During trial, KGL abandoned its claim for fuel surcharges with a reservation of right to reassert the claim in the event that this Court's ruling in regard to the statute of limitations was reversed. The Court has accepted this conditional abandonment.

The Court, at the close of KGL's case further narrowed the remaining issues in this proceeding when it granted, in part, CE's motion for "directed verdict" (involuntary dismissal) as to KGL's claim for late charges.

Based upon the following findings, KGL has sustained its case only as to $111,-102.71 for shipping charges based upon bills of lading executed by CE.

## FINDINGS OF FACT

1. KGL, at all times material hereto, was a licensed interstate "contract carrier" of freight.

2. CE, headquartered in Hialeah, Florida is a manufacturer of medical diagnostic equipment and related supplies.

3. KGL and CE, entered into a Contract Carrier Agreement dated October 12, 1979 whereby KGL would act as carrier for CE under the provisions therein.

4. Curtin Matheson Scientific, Inc. (hereinafter CMS), is a distributer of medical equipment supplies, including certain of CE's products. CMS has distribution facilities throughout portions of the continental United States. CMS is also a subsidiary corporation of CE.

5. KGL and CMS entered into a Contract Carrier Agreement also dated October 12, 1979 but signed by CMS in January 1981, whereby KGL would act as carrier for CMS under the provisions therein. Contract content was identical to the KGL–CE contract.

6. KGL carried freight from CE's Hialeah plant to CMS distribution points throughout the country. Each of the shipments were evidenced by "bills of lading". All bills of lading identified CE as the "shipper".

7. Between March 24, 1981 and December 7, 1981, one hundred and six (106) shipments (outbound) were undertaken by KGL at the request and direction of CE. These shipments were all picked up at CE's Hialeah facility and were received by the consignee (CMS). In each instance a bill of lading was executed by CE. (Copies of these bills of lading are collected and tabbed in KGL's plaintiff composite exhibit "S–1, Group I through III".)

8. Each of the bills of lading referred to in these findings of fact are uniform straight bills of lading which reflect CE as the shipper/consignor. The bills of lading were preprinted CE forms.

9. On each and every bill of lading, CE typed the words "ship prepaid".

10. Tariff rates for these movements total $110,564.52.

11. On April 23, 1981 and May 29, 1981, CE engaged KGL to move two shipments of commodities (inbound) from Edison, New Jersey to CE's Hialeah plant. The Tariff charges of $538.19 are unpaid. (These bills of lading are collected in KGL plaintiff's composite exhibit "S–1, Group IV (nos. 3 and 4)".)

12. CE did not execute the non-recourse provision of the bill of lading which, under its terms and custom in the industry, would have released CE from liability for transportation charges.

13. CE exhibit 6, a letter from KGL to CMS dated January 16, 1981, sets forth procedures on how invoices would be mailed from KGL to CE for verification, then to CMS for payment.

14. In each instance, CE made all arrangements with KGL concerning the times of shipment, size and nature of each load, destination(s), risk of loss and freight rate.

15. There was evidence CMS was providing CE with some instructions on shipping information but overwhelming evidence that CE provided all shipping instructions directly to KGL.

16. The only tariff that was ever filed with the Interstate Commerce Commission (hereinafter ICC) was under the KGL–CE contract and no ICC permit was obtained in connection with the KGL–CMS contract.

17. KGL plaintiff's exhibit 18, in conjunction with plaintiff exhibit 100 demonstrates that at least one of the bills from the shipments to be paid by CMS was actually paid by CE.

18. Paragraph 2 of CE exhibit 11, a document introduced by testimony of one of CE's witnesses, refers to the fact it took too long to pay the "Coulter's bills".

19. CE exhibit 12 indicates that the bills of lading were to be signed by the "shipper" at the time of pickup. In each instance, CE signed the bill of lading at the time of pickup.

20. CE exhibit 14 shows that the carrier, KGL, in July 1981, was still looking to CE as well as CMS for payment of past due deliveries.

21. The Court specifically finds that the pallets were transported under a verbal agreement of $3 per pallet and the agreement was made between KGL and CE, but no mention was made of a fuel surcharge obligation.

22. CE agreed to provide payment of $15,000 to KGL as a standing advance payment intended to cover KGL charges, in progress, but in excess of the seven day ICC payment rule, i.e. late charges.

23. KGL returned the $15,000 advance payment by applying it to the outstanding balance on CE's account in December 1981.

## CONCLUSIONS OF LAW

1. The applicable statute of limitations does not bar this action. Actions by contract carriers to recover their freight charges under bills of lading are governed by the state statute of limitations applicable to contract actions. At this time the Court makes its temporary ruling on this issue final. The Court specifically concludes that the Florida five year statute of limitations for obligations founded upon a written agreement is applicable to the claims in this case. See Florida Statute S95.11(2)(b); *Nashville Railroad Co. v. Central Iron Co.*, 265 U.S. 59, 65, 44 S.Ct. 441, 442, 68 L.Ed. 900 (1965); *R.E. Minton v. General Shale Products Corp.*, 52 Tenn. App. 60, 371 S.W.2d 808, 810 (Tenn.App. 1963). (Finding (FF) 1–5)

2. CE has asserted that bills of lading do not constitute a written contract upon which suit can be brought. Such is not the case. As the United States Supreme Court recognized in *Southern Pacific Transportation Co. v. Commercial Metals Co.*, 456 U.S. 336, 102 S.Ct. 1815, 72 L.Ed.2d 114 (1981), the ICC has prescribed a uniform bill of lading for use in all interstate shipments since the year 1919. Furthermore, "<the> bill of lading is the basic transportation contract between the shipper-consignor and the carrier; its terms and condi-

tions bind the shipper and the connecting carriers." *Id,* at 342, 102 S.Ct. at 1820. See also *Texas and Pacific Rail Co. v. Leatherwood,* 250 U.S. 478, 39 S.Ct. 517, 63 L.Ed. 1096 (1919). This court concludes that the bill of lading is a written contract. (FF 6–8)

3. Liability is governed by the bill of lading contract between the parties and must be decided by interpreting that contract. *C–G–F Grain Co. v. Atchison T. and S.F.R. Co.,* 351 I.C.C. 710, 712 (1976). Unless the bill provides to the contrary, the consignor remains primarily liable for the freight charges. (FF 8, 9)

4. This action was commenced on March 26, 1986 and payments were due seven (7) days after carriage. Hence, the Court's ruling on summary judgement and ruling on final judgment effectively eliminates all charges in regard to shipments preceding March 19, 1981. KGL is entitled to assert its claims for all unpaid freight charges for carriage of freight moved after March 19, 1981. (FF 10, 11)

5. Each bill of lading contains a provision whereby the consignor may indicate to the carrier that the consignee or some other party is responsible for payment of the transportation charges applicable to the particular shipment being picked up. By failing to execute this "non-recourse" provision, CE continued to be primarily liable for those charges. *Southern Pacific,* supra, 102 S.Ct. at 1820; *Watkins Motor Lines, Inc. v. Imperial Freight Brokers, Inc.,* 493 So.2d 545 (Fla. 3DCA 1986); *Missouri Pacific Railroad Co. v. Center Plains Industries, Inc.,* 720 F.2d 818 (CA5 1983). (FF 12)

6. Although CE was clearly the consignor on the bills of lading in dispute, it has contested its liability thereunder. CE argues that: (i) CMS was the "shipper" and therefore responsible for payment; and (ii) that CMS was substituted in the place of CE, relieving CE of any further responsibility to KGL;

    a. although the evidence tends to suggest that there were two shippers and therefore concurrent liability, that issue is not relevant to the issues before the Court in this proceeding. ICC law generally does not prohibit an agreement that a third party will pay as long as the shipper is not released. *Bekins Van Lines Co. v. Cauble,* 547 S.W.2d 320 (Tex.Civ.App.1977). (FF 13)

    b. the Court concludes that CE, as the party giving the instructions to the carrier, is the party that is in control of the shipment and is therefore the "shipper". (FF 14, 15)

7. CE, as the contracting party and shipper, is liable for transportation charges unless expressly released. CE offered testimony that there was a "takeover" of the KGL–CE agreement by CMS. However, the Court concludes that as a matter of law that testimony is insufficient to extinguish CE's responsibility. There is no release of CE on record. See *AAA Trucking Corp. v. Spherex, Inc.,* 272 A.2d 594 (N.H.1970). (FF 16)

8. Although the KGL–CMS contract itself was executed, it does not by expression or by implication release CE. (FF 5) CE's assertion that the mere similiarities between the two contracts was intended to effectuate a release is not credible. (FF 3, 5) It is difficult, indeed impossible to accept that sophisticated parties to a contract would leave something so important and so easy to express, to silence and speculation, if that were in fact the intention. (FF 7, 8, 9, 12, 14, 16)

9. This Court concludes that CE is liable under each of the bills of lading which are the subject of this action and that KGL is entitled to recover from CE transportation charges of $111,102.71 as the total due on all the remaining bills of lading. (FF 17, 18, 19, 20)

10. There is no evidence to support holding CE liable for any fuel surcharges. (FF 21)

11. KGL is not entitled to recover any late charges. The $15,000 advance payment was returned indicating KGL did not believe late charges were applicable. (FF 22, 23)

## DISCUSSION

The final judgement turns on whether CE had a novation to their agreement with KGL or on the individual bills of lading, such that CMS assumed the obligation to pay transportation costs from CE. The record does not contain any competent evidence of any novation of CE's liability to KGL. Although CE's exhibit 6 sets forth a procedure whereby certain payments due KGL would be paid by CMS, this is insufficient to establish a novation. CE still received the invoices direct from KGL.

CE contends that a novation is "totally irrelevant, because KGL is sueing ... on the bills of lading and not on the Agreement." However, CE overlooks the fact that a novation can be applicable to the bills of lading as well. Here, there was an opportunity for CE to extinguish its obligation on the bill of lading by executing the non-recourse provision but they failed to do so.

CE also contends that this proceeding is governed by *Thunderbird Motor Freight Lines, Inc. v. Seaman Timber Co., Inc.,* 734 F.2d 630 (11th Cir 1984) and *Louisville & Nashville Railway Co. v. Central Iron & Coal Co.,* 265 U.S. 59, 44 S.Ct. 441, 68 L.Ed. 900 (1924). The latter case correctly states that the presumption that the shipper is the consignor is rebuttable by showing, "by the bill of lading or otherwise, that the shipper of the goods was not acting on his own behalf; that this fact was known by the carrier; that the parties intended not only that the consignee should assume an obligation to pay the freight charges, but that the shipper should not assume any liability whatsoever therefore; or that he should assume only a secondary liability." *Id.* at 67–68, 44 S.Ct. at 443. Applying this to the former case it was found that the consignee was liable for freight charges because, not only did he make sole arrangements with the carrier directly, but the carrier never even presented any of the bills of lading or invoices to the alleged consignor. In fact, the arrangement made between the carrier and the consignee was such that the carrier, under consignee's direct orders, would arrive unannounced at various unscheduled times at the alleged consignors work place and request pick up at that time. The court determined that the alleged consignor had little control or interest in the arrangement between carrier and consignee and thus could hardly be deemed a shipper and was therefore not liable for freight charges. Here, the facts are readily distinguishable. CE, whether under CMS direction or not, made direct arrangements with KGL, prepared and signed the bills of lading, received invoices, and was in complete control of all pick ups by KGL. There is not sufficient evidence to indicate otherwise. As mentioned earlier, if the intent was to have CMS wholly responsible for the freight, then there were explicit means by which this could have been accomplished rather than have this Court find there existed a "secret director" making arrangements. It is clear that CMS could have controlled the shipments but did not.

KGL has consistently maintained the payment was due on each shipment seven (7) days after the shipment. The Court in this matter has found that each of the bills of lading was a contract and the evidence led to the substantially undisputed conclusion that the charges on each bill of lading were set by tariff applicable to these parties and therefore the damages are liquidated. KGL is entitled to prejudgement interest at the legal rate pursuant to Florida law beginning seven (7) days after the date of each shipment as indicated in Composite S–1. The legal rate of interest in the State of Florida from March 1981 through July 1, 1981 was 6% per annum. The rate was 12% per annum thereafter. A mathematical calculation of the prejudgement interest due through July 31, 1990 is $114,376.88 and is equal to $36.53 per diem thereafter.

Each party is to bear their own costs.

DONE and ORDERED.

## FINAL JUDGEMENT

THIS CAUSE came on before the Court for trial on October 25 and 26, 1989. The trial was continued to January 3, 1990, then

to March 29, 1990, and was concluded on March 30, 1990.

Based upon the Findings of Fact and Conclusions of Law entered herein, the Court awards Plaintiff, K.G.L. Contracting Services, Inc., Final Judgement against the Defendant, Coulter Electronics, Inc. d/b/a Coulter Diagnostics, Inc., damages of $111,102.71, pre-judgement interest of $114,376.88 through July 31, 1990 plus $36.53 per diem thereafter, for a total of $225,479.59, for which sum let execution issue forthwith.

Each party will bear their own costs.

DONE and ORDERED.